# UNITED STATES *v.* CRAFT

No. 00–1831.   Argued January 14, 2002—Decided April 17, 2002

*Kent L. Jones* argued the cause for the United States. With him on the briefs were *Solicitor General Olson, Assistant Attorney General O'Connor, Deputy Solicitor General Wallace, David English Carmack,* and *Joan I. Oppenheimer.*

*Jeffrey S. Sutton* argued the cause for respondent. With him on the briefs were *Chad A. Readler, Jeffrey A. Moyer,* and *Michael Dubetz, Jr.*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case raises the question whether a tenant by the entirety possesses "property" or "rights to property" to which a federal tax lien may attach. 26 U. S. C. § 6321. Relying on the state law fiction that a tenant by the entirety has no separate interest in entireties property, the United States Court of Appeals for the Sixth Circuit held that such property is exempt from the tax lien. We conclude that, despite the fiction, each tenant possesses individual rights in the estate sufficient to constitute "property" or "rights to property" for the purposes of the lien, and reverse the judgment of the Court of Appeals.

I

In 1988, the Internal Revenue Service (IRS) assessed $482,446 in unpaid income tax liabilities against Don Craft, the husband of respondent Sandra L. Craft, for failure to file federal income tax returns for the years 1979 through 1986. App. to Pet. for Cert. 45a, 72a. When he failed to pay, a federal tax lien attached to "all property and rights to property, whether real or personal, belonging to" him. 26 U. S. C. § 6321.

At the time the lien attached, respondent and her husband owned a piece of real property in Grand Rapids, Michigan, as tenants by the entirety. App. to Pet. for Cert. 45a. After notice of the lien was filed, they jointly executed a

quitclaim deed purporting to transfer the husband's interest in the property to respondent for one dollar. *Ibid.* When respondent attempted to sell the property a few years later, a title search revealed the lien. The IRS agreed to release the lien and allow the sale with the stipulation that half of the net proceeds be held in escrow pending determination of the Government's interest in the property. *Ibid.*

Respondent brought this action to quiet title to the escrowed proceeds. The Government claimed that its lien had attached to the husband's interest in the tenancy by the entirety. It further asserted that the transfer of the property to respondent was invalid as a fraud on creditors. *Id.*, at 46a–47a. The District Court granted the Government's motion for summary judgment, holding that the federal tax lien attached at the moment of the transfer to respondent, which terminated the tenancy by the entirety and entitled the Government to one-half of the value of the property. No. 1:93–CV–306, 1994 WL 669680, *3 (WD Mich., Sept. 12, 1994).

Both parties appealed. The Sixth Circuit held that the tax lien did not attach to the property because under Michigan state law, the husband had no separate interest in property held as a tenant by the entirety. 140 F. 3d 638, 643 (1998). It remanded to the District Court to consider the Government's alternative claim that the conveyance should be set aside as fraudulent. *Id.*, at 644.

On remand, the District Court concluded that where, as here, state law makes property exempt from the claims of creditors, no fraudulent conveyance can occur. 65 F. Supp. 2d 651, 657–658 (WD Mich. 1999). It found, however, that respondent's husband's use of nonexempt funds to pay the mortgage on the entireties property, which placed them beyond the reach of creditors, constituted a fraudulent act under state law, and the court awarded the IRS a share of the proceeds of the sale of the property equal to that amount. *Id.*, at 659.

Both parties appealed the District Court's decision, the Government again claiming that its lien attached to the husband's interest in the entireties property. The Court of Appeals held that the prior panel's opinion was law of the case on that issue. 233 F. 3d 358, 363–369 (CA6 2000). It also affirmed the District Court's determination that the husband's mortgage payments were fraudulent. *Id.*, at 369–375.

We granted certiorari to consider the Government's claim that respondent's husband had a separate interest in the entireties property to which the federal tax lien attached. 533 U. S. 976 (2001).

## II

Whether the interests of respondent's husband in the property he held as a tenant by the entirety constitutes "property and rights to property" for the purposes of the federal tax lien statute, 26 U. S. C. § 6321, is ultimately a question of federal law. The answer to this federal question, however, largely depends upon state law. The federal tax lien statute itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States* v. *Bess*, 357 U. S. 51, 55 (1958); see also *United States* v. *National Bank of Commerce*, 472 U. S. 713, 722 (1985). Accordingly, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye* v. *United States*, 528 U. S. 49, 58 (1999).

A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. See B. Cardozo, Paradoxes of Legal Science 129 (1928) (reprint 2000); see also *Dickman* v. *Commissioner*, 465 U. S. 330, 336 (1984). State law determines only which sticks are in a person's bundle.

Whether those sticks qualify as "property" for purposes of the federal tax lien statute is a question of federal law.

In looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien. In *Drye* v. *United States, supra,* we considered a situation where state law allowed an heir subject to a federal tax lien to disclaim his interest in the estate. The state law also provided that such a disclaimer would "creat[e] the legal fiction" that the heir had predeceased the decedent and would correspondingly be deemed to have had no property interest in the estate. *Id.,* at 53. We unanimously held that this state law fiction did not control the federal question and looked instead to the realities of the heir's interest. We concluded that, despite the State's characterization, the heir possessed a "right to property" in the estate—the right to accept the inheritance or pass it along to another—to which the federal lien could attach. *Id.,* at 59–61.

### III

We turn first to the question of what rights respondent's husband had in the entireties property by virtue of state law. In order to understand these rights, the tenancy by the entirety must first be placed in some context.

English common law provided three legal structures for the concurrent ownership of property that have survived into modern times: tenancy in common, joint tenancy, and tenancy by the entirety. 1 G. Thompson, Real Property § 4.06(g) (D. Thomas ed. 1994) (hereinafter Thompson). The tenancy in common is now the most common form of concurrent ownership. 7 R. Powell & P. Rohan, Real Property § 51.01[3] (M. Wolf ed. 2001) (hereinafter Powell). The common law characterized tenants in common as each owning

a separate fractional share in undivided property. *Id.,* § 50.01[1]. Tenants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares. They also have the power to pass these shares to their heirs upon death. Tenants in common have many other rights in the property, including the right to use the property, to exclude third parties from it, and to receive a portion of any income produced from it. *Id.,* §§ 50.03–50.06.

Joint tenancies were the predominant form of concurrent ownership at common law, and still persist in some States today. 4 Thompson § 31.05. The common law characterized each joint tenant as possessing the entire estate, rather than a fractional share: "[J]oint-tenants have one and the same interest . . . held by one and the same undivided possession." 2 W. Blackstone, Commentaries on the Laws of England 180 (1766). Joint tenants possess many of the rights enjoyed by tenants in common: the right to use, to exclude, and to enjoy a share of the property's income. The main difference between a joint tenancy and a tenancy in common is that a joint tenant also has a right of automatic inheritance known as "survivorship." Upon the death of one joint tenant, that tenant's share in the property does not pass through will or the rules of intestate succession; rather, the remaining tenant or tenants automatically inherit it. *Id.,* at 183; 7 Powell § 51.01[3]. Joint tenants' right to alienate their individual shares is also somewhat different. In order for one tenant to alienate his or her individual interest in the tenancy, the estate must first be severed—that is, converted to a tenancy in common with each tenant possessing an equal fractional share. *Id.,* § 51.04[1]. Most States allowing joint tenancies facilitate alienation, however, by allowing severance to automatically accompany a conveyance of that interest or any other overt act indicating an intent to sever. *Ibid.*

A tenancy by the entirety is a unique sort of concurrent ownership that can only exist between married persons. 4

Thompson § 33.02. Because of the common-law fiction that the husband and wife were one person at law (that person, practically speaking, was the husband, see J. Cribbet et al., Cases and Materials on Property 329 (6th ed. 1990)), Blackstone did not characterize the tenancy by the entirety as a form of concurrent ownership at all. Instead, he thought that entireties property was a form of single ownership by the marital unity. Orth, Tenancy by the Entirety: The Strange Career of the Common-Law Marital Estate, 1997 B. Y. U. L. Rev. 35, 38–39. Neither spouse was considered to own any individual interest in the estate; rather, it belonged to the couple.

Like joint tenants, tenants by the entirety enjoy the right of survivorship. Also like a joint tenancy, unilateral alienation of a spouse's interest in entireties property is typically not possible without severance. Unlike joint tenancies, however, tenancies by the entirety cannot easily be severed unilaterally. 4 Thompson § 33.08(b). Typically, severance requires the consent of both spouses, *id.*, § 33.08(a), or the ending of the marriage in divorce, *id.*, § 33.08(d). At common law, all of the other rights associated with the entireties property belonged to the husband: as the head of the household, he could control the use of the property and the exclusion of others from it and enjoy all of the income produced from it. *Id.*, § 33.05. The husband's control of the property was so extensive that, despite the rules on alienation, the common law eventually provided that he could unilaterally alienate entireties property without severance subject only to the wife's survivorship interest. Orth, *supra*, at 40–41.

With the passage of the Married Women's Property Acts in the late 19th century granting women distinct rights with respect to marital property, most States either abolished the tenancy by the entirety or altered it significantly. 7 Powell § 52.01[2]. Michigan's version of the estate is typical of the modern tenancy by the entirety. Following Blackstone, Michigan characterizes its tenancy by the entirety as creat-

ing no individual rights whatsoever: "It is well settled under the law of this State that one tenant by the entirety has no interest separable from that of the other . . . . Each is vested with an entire title." *Long* v. *Earle,* 277 Mich. 505, 517, 269 N. W. 577, 581 (1936). And yet, in Michigan, each tenant by the entirety possesses the right of survivorship. Mich. Comp. Laws Ann. § 554.872(g) (West Supp. 1997), recodified at § 700.2901(2)(g) (West Supp. Pamphlet 2001). Each spouse—the wife as well as the husband—may also use the property, exclude third parties from it, and receive an equal share of the income produced by it. See § 557.71 (West 1988). Neither spouse may unilaterally alienate or encumber the property, *Long* v. *Earle, supra,* at 517, 269 N. W., at 581; *Rogers* v. *Rogers,* 136 Mich. App. 125, 134, 356 N. W. 2d 288, 292 (1984), although this may be accomplished with mutual consent, *Eadus* v. *Hunter,* 249 Mich. 190, 228 N. W. 782 (1930). Divorce ends the tenancy by the entirety, generally giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise. Mich. Comp. Laws Ann. § 552.102 (West 1988).

In determining whether respondent's husband possessed "property" or "rights to property" within the meaning of 26 U. S. C. § 6321, we look to the individual rights created by these state law rules. According to Michigan law, respondent's husband had, among other rights, the following rights with respect to the entireties property: the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the respondent's consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the respondent's consent, and the right to block respondent from selling or encumbering the property unilaterally.

## IV

We turn now to the federal question of whether the rights Michigan law granted to respondent's husband as a tenant by the entirety qualify as "property" or "rights to property" under § 6321. The statutory language authorizing the tax lien "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States* v. *National Bank of Commerce*, 472 U. S., at 719–720. "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank* v. *United States*, 326 U. S. 265, 267 (1945). We conclude that the husband's rights in the entireties property fall within this broad statutory language.

Michigan law grants a tenant by the entirety some of the most essential property rights: the right to use the property, to receive income produced by it, and to exclude others from it. See *Dolan* v. *City of Tigard*, 512 U. S. 374, 384 (1994) ("[T]he right to exclude others" is " 'one of the most essential sticks in the bundle of rights that are commonly characterized as property' " (quoting *Kaiser Aetna* v. *United States*, 444 U. S. 164, 176 (1979))); *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U. S. 419, 435 (1982) (including "use" as one of the "[p]roperty rights in a physical thing"). These rights alone may be sufficient to subject the husband's interest in the entireties property to the federal tax lien. They gave him a substantial degree of control over the entireties property, and, as we noted in *Drye*, "in determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' [t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property." 528 U. S., at 61 (some internal quotation marks omitted).

The husband's rights in the estate, however, went beyond use, exclusion, and income. He also possessed the right to alienate (or otherwise encumber) the property with the consent of respondent, his wife. *Loretto, supra*, at 435 (the

right to "dispose" of an item is a property right). It is true, as respondent notes, that he lacked the right to unilaterally alienate the property, a right that is often in the bundle of property rights. See also *post*, at 296–297 (THOMAS, J., dissenting). There is no reason to believe, however, that this one stick—the right of unilateral alienation—is essential to the category of "property."

This Court has already stated that federal tax liens may attach to property that cannot be unilaterally alienated. In *United States* v. *Rodgers*, 461 U. S. 677 (1983), we considered the Federal Government's power to foreclose homestead property attached by a federal tax lien. Texas law provided that "'the owner or claimant of the property claimed as homestead [may not], if married, sell or abandon the homestead without the consent of the other spouse.'" *Id.*, at 684–685 (quoting Tex. Const., Art. 16, § 50). We nonetheless stated that "[i]n the homestead context . . . , there is no doubt . . . that not only do *both* spouses (rather than neither) have an independent interest in the homestead property, but that a federal tax lien can at least *attach* to each of those interests." 461 U. S., at 703, n. 31; cf. *Drye, supra*, at 60, n. 7 (noting that "an interest in a spendthrift trust has been held to constitute '"property" for purposes of § 6321' even though the beneficiary may not transfer that interest to third parties").

Excluding property from a federal tax lien simply because the taxpayer does not have the power to unilaterally alienate it would, moreover, exempt a rather large amount of what is commonly thought of as property. It would exempt not only the type of property discussed in *Rodgers*, but also some community property. Community property States often provide that real community property cannot be alienated without the consent of both spouses. See, *e. g.*, Ariz. Rev. Stat. Ann. § 25–214(C) (2000); Cal. Fam. Code Ann. § 1102 (West 1994); Idaho Code § 32–912 (1996); La. Civ. Code Ann., Art. 2347 (West Supp. 2002); Nev. Rev. Stat. Ann. § 123.230(3)

(Supp. 2001); N. M. Stat. Ann. § 40–3–13 (1999); Wash. Rev. Code § 26.16.030(3) (1994). Accordingly, the fact that respondent's husband could not unilaterally alienate the property does not preclude him from possessing "property and rights to property" for the purposes of § 6321.

Respondent's husband also possessed the right of survivorship—the right to automatically inherit the whole of the estate should his wife predecease him. Respondent argues that this interest was merely an expectancy, which we suggested in *Drye* would not constitute "property" for the purposes of a federal tax lien. 528 U. S., at 60, n. 7 ("[We do not mean to suggest] that an expectancy that has pecuniary value . . . would fall within § 6321 prior to the time it ripens into a present estate"). *Drye* did not decide this question, however, nor do we need to do so here. As we have discussed above, a number of the sticks in respondent's husband's bundle were presently existing. It is therefore not necessary to decide whether the right to survivorship alone would qualify as "property" or "rights to property" under § 6321.

That the rights of respondent's husband in the entireties property constitute "property" or "rights to property" "belonging to" him is further underscored by the fact that, if the conclusion were otherwise, the entireties property would belong to no one for the purposes of § 6321. Respondent had no more interest in the property than her husband; if neither of them had a property interest in the entireties property, who did? This result not only seems absurd, but would also allow spouses to shield their property from federal taxation by classifying it as entireties property, facilitating abuse of the federal tax system. Johnson, After *Drye:* The Likely Attachment of the Federal Tax Lien to Tenancy-by-the-Entireties Interests, 75 Ind. L. J. 1163, 1171 (2000).

JUSTICE SCALIA's and JUSTICE THOMAS' dissents claim that the conclusion that the husband possessed an interest in the entireties property to which the federal tax lien could

attach is in conflict with the rules for tax liens relating to partnership property. See *post*, at 289 (opinion of SCALIA, J.); see also *post*, at 295–296, n. 4 (opinion of THOMAS, J.). This is not so. As the authorities cited by JUSTICE THOMAS reflect, the federal tax lien does attach to an individual partner's interest in the partnership, that is, to the fair market value of his or her share in the partnership assets. *Ibid.* (citing B. Bittker & M. McMahon, Federal Income Taxation of Individuals ¶ 44.5[4][a] (2d ed. 1995 and 2000 Cum. Supp.)); see also 1 A. Bromberg & L. Ribstein, Partnership § 3.05(d) (2002–1 Supp.) (hereinafter Bromberg & Ribstein) (citing Uniform Partnership Act § 28, 6 U. L. A. 744 (1995)). As a holder of this lien, the Federal Government is entitled to "receive . . . the profits to which the assigning partner would otherwise be entitled," including predissolution distributions and the proceeds from dissolution. Uniform Partnership Act § 27(1), *id.*, at 736.

There is, however, a difference between the treatment of entireties property and partnership assets. The Federal Government may not compel the sale of partnership assets (although it may foreclose on the partner's interest, 1 Bromberg & Ribstein § 3.05(d)(3)(iv)). It is this difference that is reflected in JUSTICE SCALIA's assertion that partnership property cannot be encumbered by an individual partner's debts. See *post*, at 289. This disparity in treatment between the two forms of ownership, however, arises from our decision in *United States* v. *Rodgers, supra* (holding that the Government may foreclose on property even where the co-owners lack the right of unilateral alienation), and not our holding today. In this case, it is instead the dissenters' theory that departs from partnership law, as it would hold that the Federal Government's lien does not attach to the husband's interest in the entireties property at all, whereas the lien may attach to an individual's interest in partnership property.

Respondent argues that, whether or not we would conclude that respondent's husband had an interest in the entireties property, legislative history indicates that Congress did not intend that a federal tax lien should attach to such an interest. In 1954, the Senate rejected a proposed amendment to the tax lien statute that would have provided that the lien attach to "property or rights to property (including the interest. of such person as tenant by the entirety)." S. Rep. No. 1622, 83d Cong., 2d Sess., 575 (1954). We have elsewhere held, however, that failed legislative proposals are "a particularly dangerous ground on which to rest an interpretation of a prior statute," *Pension Benefit Guaranty Corporation* v. *LTV Corp.*, 496 U. S. 633, 650 (1990), reasoning that " '[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.' " *Central Bank of Denver, N. A.* v. *First Interstate Bank of Denver, N. A.*, 511 U. S. 164, 187 (1994). This case exemplifies the risk of relying on such legislative history. As we noted in *United States* v. *Rodgers*, 461 U. S., at 704, n. 31, some legislative history surrounding the 1954 amendment indicates that the House intended the amendment to be nothing more than a "clarification" of existing law, and that the Senate rejected the amendment only because it found it "superfluous." See H. R. Rep. No. 1337, 83d Cong., 2d Sess., A406 (1954) (noting that the amendment would "clarif[y] the term 'property and rights to property' by expressly including therein the interest of the delinquent taxpayer in an estate by the entirety"); S. Rep. No. 1622, at 575 ("It is not clear what change in existing law would be made by the parenthetical phrase. The deletion of the phrase is intended to continue the existing law").

The same ambiguity that plagues the legislative history accompanies the common-law background of Congress' enactment of the tax lien statute. Respondent argues that

Congress could not have intended the passage of the federal tax lien statute to alter the generally accepted rule that liens could not attach to entireties property. See *Astoria Fed. Sav. & Loan Assn.* v. *Solimino,* 501 U. S. 104, 108 (1991) ("[W]here a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident'"). The common-law rule was not so well established with respect to the application of a federal tax lien that we must assume that Congress considered the impact of its enactment on the question now before us. There was not much of a common-law background on the question of the application of federal tax liens, as the first court of appeals cases dealing with the application of such a lien did not arise until the 1950's. *United States* v. *Hutcherson,* 188 F. 2d 326 (CA8 1951); *Raffaele* v. *Granger,* 196 F. 2d 620 (CA3 1952). This background is not sufficient to overcome the broad statutory language Congress did enact, authorizing the lien to attach to "all property and rights to property" a taxpayer might have.

We therefore conclude that respondent's husband's interest in the entireties property constituted "property" or "rights to property" for the purposes of the federal tax lien statute. We recognize that Michigan makes a different choice with respect to state law creditors: "[L]and held by husband and wife as tenants by entirety is not subject to levy under execution on judgment rendered against either husband or wife alone." *Sanford* v. *Bertrau,* 204 Mich. 244, 247, 169 N. W. 880, 881 (1918). But that by no means dictates our choice. The interpretation of 26 U. S. C. § 6321 is a federal question, and in answering that question we are in no way bound by state courts' answers to similar questions involving state law. As we elsewhere have held, "'exempt status under state law does not bind the federal collector.'" *Drye* v. *United States,* 528 U. S., at 59. See also *Rodgers, supra,* at 701 (clarifying that the Supremacy Clause "provides the

underpinning for the Federal Government's right to sweep aside state-created exemptions").

## V

We express no view as to the proper valuation of respondent's husband's interest in the entireties property, leaving this for the Sixth Circuit to determine on remand. We note, however, that insofar as the amount is dependent upon whether the 1989 conveyance was fraudulent, see *post,* at 290, n. 1 (THOMAS, J., dissenting), this case is somewhat anomalous. The Sixth Circuit affirmed the District Court's judgment that this conveyance was not fraudulent, and the Government has not sought certiorari review of that determination. Since the District Court's judgment was based on the notion that, because the federal tax lien could not attach to the property, transferring it could not constitute an attempt to evade the Government creditor, 65 F. Supp. 2d, at 657–659, in future cases, the fraudulent conveyance question will no doubt be answered differently.

The judgment of the United States Court of Appeals for the Sixth Circuit is accordingly reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

I join JUSTICE THOMAS's dissent, which points out (to no relevant response from the Court) that a State's decision to treat the marital partnership as a separate legal entity, whose property cannot be encumbered by the debts of its individual members, is no more novel and no more "artificial" than a State's decision to treat the commercial partnership as a separate legal entity, whose property cannot be encumbered by the debts of its individual members.

I write separately to observe that the Court nullifies (insofar as federal taxes are concerned, at least) a form of prop-

erty ownership that was of particular benefit to the stay-at-home spouse or mother. She is overwhelmingly likely to be the survivor that obtains title to the unencumbered property; and she (as opposed to her business-world husband) is overwhelmingly unlikely to be the source of the individual indebtedness against which a tenancy by the entirety protects. It is regrettable that the Court has eliminated a large part of this traditional protection retained by many States.

JUSTICE THOMAS, with whom JUSTICE STEVENS and JUSTICE SCALIA join, dissenting.

The Court today allows the Internal Revenue Service (IRS) to reach proceeds from the sale of real property that did not belong to the taxpayer, respondent's husband, Don Craft,[1] because, in the Court's view, he "possesse[d] individual rights in the [tenancy by the entirety] estate sufficient to constitute 'property' or 'rights to property' for the purposes of the lien" created by 26 U. S. C. § 6321. *Ante,* at 276. The Court does not contest that the tax liability the IRS seeks to satisfy is Mr. Craft's alone, and does not claim that, under Michigan law, real property held as a tenancy by the entirety belongs to either spouse individually. Nor does the Court

---

[1] The Grand Rapids property was tenancy by the entirety property owned by Mr. and Mrs. Craft when the tax lien attached, but was conveyed by the Crafts to Mrs. Craft by quitclaim deed in 1989. That conveyance terminated the entirety estate. Mich. Comp. Laws Ann. § 557.101 (West 1988); see also *United States* v. *Certain Real Property Located at 2525 Leroy Lane,* 910 F. 2d 343, 351 (CA6 1990). The District Court and Court of Appeals both held that the transfer did not constitute a fraudulent conveyance, a ruling the Government has not appealed. The IRS is undoubtedly entitled to any proceeds that Mr. Craft received or to which he was entitled from *the 1989 conveyance* of the tenancy by the entirety property for $1; at that point the tenancy by the entirety estate was destroyed and at least half of the proceeds, or 50 cents, was "property" or "rights to property" "belonging to" Mr. Craft. By contrast, the proceeds that the IRS claims here are from *Mrs. Craft's 1992 sale* of the property to a third party. At the time of the sale, she owned the property in fee simple, and accordingly Mr. Craft neither received nor was entitled to these funds.

suggest that the federal tax lien attaches to particular "rights to property" held individually by Mr. Craft. Rather, borrowing the metaphor of "property as a 'bundle of sticks'— a collection of individual rights which, in certain combinations, constitute property," *ante*, at 278, the Court proposes that so long as sufficient "sticks" in the bundle of "rights to property" "belong to" a delinquent taxpayer, the lien can attach as if the property itself belonged to the taxpayer, *ante*, at 285.

This amorphous construct ignores the primacy of state law in defining property interests, eviscerates the statutory distinction between "property" and "rights to property" drawn by § 6321, and conflicts with an unbroken line of authority from this Court, the lower courts, and the IRS. Its application is all the more unsupportable in this case because, in my view, it is highly unlikely that the limited individual "rights to property" recognized in a tenancy by the entirety under Michigan law are themselves subject to lien. I would affirm the Court of Appeals and hold that Mr. Craft did not have "property" or "rights to property" to which the federal tax lien could attach.

I

Title 26 U. S. C. § 6321 provides that a federal tax lien attaches to "all property and rights to property, whether real or personal, belonging to" a delinquent taxpayer. It is uncontested that a federal tax lien itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States* v. *Bess*, 357 U. S. 51, 55 (1958) (construing the 1939 version of the federal tax lien statute). Consequently, the Government's lien under § 6321 "cannot extend beyond the property interests held by the delinquent taxpayer," *United States* v. *Rodgers*, 461 U. S. 677, 690–691 (1983), under state law. Before today, no one disputed that the IRS, by operation of § 6321, "steps into the taxpayer's shoes," and has the same rights as the taxpayer in property or rights to property sub-

ject to the lien. B. Bittker & M. McMahon, Federal Income Taxation of Individuals ¶ 44.5[4][a] (2d ed. 1995 and 2000 Cum. Supp.) (hereinafter Bittker). I would not expand "'the nature of the legal interest'" the taxpayer has in the property beyond those interests recognized under state law. *Aquilino* v. *United States*, 363 U. S. 509, 513 (1960) (citing *Morgan* v. *Commissioner*, 309 U. S. 78, 82 (1940)).

## A

If the Grand Rapids property "belong[ed]' to" Mr. Craft under state law prior to the termination of the tenancy by the entirety, the federal tax lien would have attached to the Grand Rapids property. But that is not this case. As the Court recognizes, pursuant to Michigan law, as under English common law, property held as a tenancy by the entirety does not belong to either spouse, but to a single entity composed of the married persons. See *ante*, at 280–282. Neither spouse has "any separate interest in such an estate." *Sanford* v. *Bertrau*, 204 Mich. 244, 249, 169 N. W. 880, 882 (1918); see also *Long* v. *Earle*, 277 Mich. 505, 517, 269 N. W. 577, 581 (1936) ("Each [spouse] is vested with an entire title and as against the one who attempts alone to convey or incumber such real estate, the other has an absolute title"). An entireties estate constitutes an indivisible "sole tenancy." See *Budwit* v. *Herr*, 339 Mich. 265, 272, 63 N. W. 2d 841, 844 (1954); see also *Tyler* v. *United States*, 281 U. S. 497, 501 (1930) ("[T]he tenants constitute a unit; neither can dispose of any part of the estate without the consent of the other; and the whole continues in the survivor"). Because Michigan does not recognize a separate spousal interest in the Grand Rapids property, it did not "belong" to either respondent or her husband individually when the IRS asserted its lien for Mr. Craft's individual tax liability. Thus, the property was not property to which the federal tax lien could attach for Mr. Craft's tax liability.

The Court does not dispute this characterization of Michigan's law with respect to the essential attributes of the tenancy by the entirety estate. However, relying on *Drye* v. *United States*, 528 U. S. 49, 59 (1999), which in turn relied upon *United States* v. *Irvine*, 511 U. S. 224 (1994), and *United States* v. *Mitchell*, 403 U. S. 190 (1971), the Court suggests that Michigan's definition of the tenancy by the entirety estate should be overlooked because federal tax law is not controlled by state legal fictions concerning property ownership. *Ante*, at 279. But the Court misapprehends the application of *Drye* to this case.

*Drye*, like *Irvine* and *Mitchell* before it, was concerned not with whether state law recognized "property" as belonging to the taxpayer in the first place, but rather with whether state laws could disclaim or exempt such property from federal tax liability after the property interest was created. *Drye* held only that a state-law disclaimer could not retroactively undo a vested right in an estate that the taxpayer already held, and that a federal lien therefore attached to the taxpayer's interest in the estate. 528 U. S., at 61 (recognizing that a disclaimer does not restore the *status quo ante* because the heir "determines who will receive the property—himself if he does not disclaim, a known other if he does"). Similarly, in *Irvine*, the Court held that a state law allowing an individual to disclaim a gift could not force the Court to be "struck blind" to the fact that the transfer of "property" or "property rights" for which the gift tax was due had already occurred; "*state property transfer rules* do not transfer into federal taxation rules." 511 U. S., at 239–240 (emphasis added). See also *Mitchell, supra*, at 204 (holding that right to renounce a marital interest under state law does not indicate that the taxpayer had no right to property before the renunciation).

Extending this Court's "state law fiction" jurisprudence to determine whether property or rights to property *exist* under state law in the first place works a sea change in the

role States have traditionally played in "creating and defining" property interests. By erasing the careful line between state laws that purport to disclaim or exempt property interests after the fact, which the federal tax lien does not respect, and state laws' definition of property and property rights, which the federal tax lien does respect, the Court does not follow *Drye*, but rather creates a new federal common law of property. This contravenes the previously settled rule that the definition and scope of property is left to the States. See *Aquilino, supra*, at 513, n. 3 (recognizing unsoundness of leaving the definition of property interests to a nebulous body of federal law, "because it ignores the long-established role that the States have played in creating property interests and places upon the courts the task of attempting to ascertain a taxpayer's property rights under an undefined rule of federal law").

## B

That the Grand Rapids property does not belong to Mr. Craft under Michigan law does not end the inquiry, however, since the federal tax lien attaches not only to "property" but also to any "rights to property" belonging to the taxpayer. While the Court concludes that a laundry list of "rights to property" belonged to Mr. Craft as a tenant by the entirety,[2] it does not suggest that the tax lien attached to any of these particular rights.[3] Instead, the Court gathers

---

[2] The parties disagree as to whether Michigan law recognizes the "rights to property" identified by the Court as *individual* rights "belonging to" each tenant in entireties property. Without deciding a question better resolved by the Michigan courts, for the purposes of this case I will assume, *arguendo*, that Michigan law recognizes separate interests in these "rights to property."

[3] Nor does the Court explain how such "rights to property" survived the destruction of the tenancy by the entirety, although, for all intents and purposes, it acknowledges that such rights as it identifies exist by virtue of the tenancy by the entirety estate. Even Judge Ryan's concurrence in the Sixth Circuit's first ruling in this matter is best read as making the

these rights together and opines that there were sufficient sticks to form a bundle, so that "respondent's husband's interest in the entireties property constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute." *Ante,* at 288, 285.

But the Court's "sticks in a bundle" metaphor collapses precisely because of the distinction expressly drawn by the statute, which distinguishes between "property" and "rights to property." The Court refrains from ever stating whether this case involves "property" or "rights to property" even though § 6321 specifically provides that the federal tax lien attaches to "property" and "rights to property" "belonging to" the delinquent taxpayer, and not to an imprecise construct of "individual rights in the estate sufficient to constitute 'property' or 'rights to property' for the purposes of the lien." *Ante,* at 276.[4]

___

Federal Government's right to execute its lien dependent upon the factual finding that the conveyance was a fraudulent transaction. See 140 F. 3d 638, 648–649 (1998).

[4] The Court's reasoning that because a taxpayer has rights to property a federal tax lien can attach not only to those rights but also to the property itself could have far-reaching consequences. As illustration, in the partnership setting as elsewhere, the Government's lien under § 6321 places the Government in no better position than the taxpayer to whom the property belonged: "[F]or example, the lien for a partner's unpaid income taxes attaches to his interest in the firm, not to the firm's assets." Bittker ¶ 44.5[4][a]. Though partnership property currently is "not subject to attachment or execution, except on a claim against the partnership," Rev. Rul. 73–24, 1973–1 Cum. Bull. 602; cf. *United States* v. *Kaufman,* 267 U. S. 408 (1925), under the logic of the Court's opinion partnership property could be attached for the tax liability of an individual partner. Like a tenant in a tenancy by the entirety, the partner has significant rights to use, enjoy, and control the partnership property in conjunction with his partners. I see no principled way to distinguish between the propriety of attaching the federal tax lien to partnership property to satisfy the tax liability of a partner, in contravention of current practice, and the propriety of attaching the federal tax lien to tenancy by the entirety property in order to satisfy the tax liability of one spouse, also in contravention of current practice. I do not doubt that a tax lien

Rather than adopt the majority's approach, I would ask specifically, as the statute does, whether Mr. Craft had any particular "rights to property" to which the federal tax lien could attach. He did not.[5] Such "rights to property" that have been subject to the § 6321 lien are valuable and "pecuniary," *i. e.*, they can be attached, and levied upon or sold by the Government.[6] *Drye*, 528 U. S., at 58–60, and n. 7. With such rights subject to lien, the taxpayer's interest has "ripen[ed] into a present estate" of some form and is more than a mere expectancy, *id.*, at 60, n. 7, and thus the taxpayer has an apparent right "to channel that value to [another]," *id.*, at 61.

In contrast, a tenant in a tenancy by the entirety not only lacks a present divisible vested interest in the property and control with respect to the sale, encumbrance, and transfer of the property, but also does not possess the ability to devise any portion of the property because it is subject to the other's indestructible right of survivorship. *Rogers* v. *Rogers*,

---

may attach to a partner's partnership interest to satisfy his individual tax liability, but it is well settled that the lien does not, thereby, attach to property belonging to the partnership. The problem for the IRS in this case is that, unlike a partnership interest, such limited rights that Mr. Craft had in the Grand Rapids property are not the kind of rights to property to which a lien can attach, and the Grand Rapids property itself never "belong[ed] to" him under Michigan law.

[5] Even such rights as Mr. Craft arguably had in the Grand Rapids property bear no resemblance to those to which a federal tax lien has ever attached. See W. Elliott, Federal Tax Collections, Liens, and Levies ¶¶ 9.09[3][a]–[f] (2d ed. 1995 and 2000 Cum. Supp.) (hereinafter Elliott) (listing examples of rights to property to which a federal tax lien attaches, such as the right to compel payment; the right to withdraw money from a bank account, or to receive money from accounts receivable; wages earned but not paid; installment payments under a contract of sale of real estate; annuity payments; a beneficiary's rights to payment under a spendthrift trust; a liquor license; an easement; the taxpayer's interest in a timeshare; options; the taxpayer's interest in an employee benefit plan or individual retirement account).

[6] See 26 U. S. C. §§ 6331, 6335–6336.

136 Mich. App. 125, 135–137, 356 N. W. 2d 288, 293–294 (1984). This latter fact makes the property significantly different from community property, where each spouse has a present one-half vested interest in the whole, which may be devised by will or otherwise to a person other than the spouse. See 4 G. Thompson, Real Property § 37.14(a) (D. Thomas ed. 1994) (noting that a married person's power to devise one-half of the community property is "consistent with the fundamental characteristic of community property": "community ownership means that each spouse owns 50% of each community asset").[7] See also *Drye*, 528 U. S., at 61 ("[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' the *important consideration is the breadth of the control the taxpayer could exercise over the property*" (emphasis added, citation and brackets omitted)).

It is clear that some of the individual rights of a tenant in entireties property are primarily personal, dependent upon the taxpayer's status as a spouse, and similarly not susceptible to a tax lien. For example, the right to use the property in conjunction with one's spouse and to exclude all others appears particularly ill suited to being transferred to another, see *ibid.*, and to lack "exchangeable value," *id.*, at 56.

Nor do other identified rights rise to the level of "rights to property" to which a § 6321 lien can attach, because they represent, at most, a contingent future interest, or an "expectancy" that has not "ripen[ed] into a present estate." *Id.*, at 60, n. 7 ("Nor do we mean to suggest that an expec-

---

[7] And it is similarly different from the situation in *United States* v. *Rodgers*, 461 U. S. 677 (1983), where the question was not whether a vested property interest in the family home to which the federal tax lien could attach "belong[ed] to" the taxpayer. Rather, in *Rodgers*, the only question was whether the federal tax lien for the husband's tax liability could be *foreclosed* against the property under 26 U. S. C. § 7403, despite his wife's homestead right under state law. See 461 U. S., at 701–703, and n. 31.

tancy that has pecuniary value and is transferable under state law would fall within § 6321 prior to the time it ripens into a present estate"). Cf. *Bess*, 357 U. S., at 55–56 (holding that no federal tax lien could attach to proceeds of the taxpayer's life insurance policy because "[i]t would be anomalous to view as 'property' subject to lien proceeds never within the insured's reach to enjoy"). By way of example, the survivorship right wholly depends upon one spouse outliving the other, at which time the survivor gains "substantial rights, in respect of the property, theretofore never enjoyed by [the] survivor." *Tyler*, 281 U. S., at 503. While the Court explains that it is "not necessary to decide whether the right to survivorship alone would qualify as 'property' or 'rights to property'" under § 6321, *ante*, at 285, the facts of this case demonstrate that it would not. Even assuming both that the right of survivability continued after the demise of the tenancy estate and that the tax lien could attach to such a contingent future right, creating a lienable interest upon the death of the nonliable spouse, it would not help the IRS here; respondent's husband predeceased her in 1998, and there is no right of survivorship at issue in this case.

Similarly, while one spouse might escape the absolute limitations on individual action with respect to tenancy by the entirety property by obtaining the right to one-half of the property upon divorce, or by agreeing with the other spouse to sever the tenancy by the entirety, neither instance is an event of sufficient certainty to constitute a "right to property" for purposes of § 6321. Finally, while the federal tax lien could arguably have attached to a tenant's right to any "rents, products, income, or profits" of real property held as tenants by the entirety, Mich. Comp. Laws Ann. § 557.71 (West 1988), the Grand Rapids property created no rents, products, income, or profits for the tax lien to attach to.

In any event, all such rights to property, dependent as they are upon the existence of the tenancy by the entirety

estate, were likely destroyed by the quitclaim deed that severed the tenancy. See n. 1, *supra.* Unlike a lien attached to the property itself, which would survive a conveyance, a lien attached to a "right to property" falls squarely within the maxim that "the tax collector not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out." Bittker ¶ 44.5[4][a] (noting that "a state judgment terminating the taxpayer's rights to an asset also extinguishes the federal tax lien attached thereto"). See also Elliott ¶ 9.09[3][d][i] (explaining that while a tax lien may attach to a taxpayer's option on property, if the option terminates, the Government's lien rights would terminate as well).

Accordingly, I conclude that Mr. Craft had neither "property" nor "rights to property" to which the federal tax lien could attach.

## II

That the federal tax lien did not attach to the Grand Rapids property is further supported by the consensus among the lower courts. For more than 50 years, every federal court reviewing tenancies by the entirety in States with a similar understanding of tenancy by the entirety as Michigan has concluded that a federal tax lien cannot attach to such property to satisfy an individual spouse's tax liability.[8] This

---

[8] See *IRS* v. *Gaster,* 42 F. 3d 787, 791 (CA3 1994) (concluding that the IRS is not entitled to a lien on property owned as a tenancy by the entirety to satisfy the tax obligations of one spouse); *Pitts* v. *United States,* 946 F. 2d 1569, 1571–1572 (CA4 1991) (same); *United States* v. *American Nat. Bank of Jacksonville,* 255 F. 2d 504, 507 (CA5), cert. denied, 358 U. S. 835 (1958) (same); *Raffaele* v. *Granger,* 196 F. 2d 620, 622–623 (CA3 1952) (same); *United States* v. *Hutcherson,* 188 F. 2d 326, 331 (CA8 1951) (explaining that the interest of one spouse in tenancy by the entirety property "is not a right to property or property in any sense"); *United States* v. *Nathanson,* 60 F. Supp. 193, 194 (ED Mich. 1945) (finding no designation in the Federal Revenue Act for imposing tax upon property held by the entirety for taxes due from one person alone); *Shaw* v. *United States,* 94 F. Supp. 245, 246 (WD Mich. 1939) (recognizing that the nature of the estate under Michigan law precludes the tax lien from attaching to ten-

consensus is supported by the IRS' consistent recognition, arguably against its own interest, that a federal tax lien against one spouse cannot attach to property or rights to property held as a tenancy by the entirety.[9]

That the Court fails to so much as mention this consensus, let alone address it or give any reason for overruling it, is puzzling. While the positions of the lower courts and the IRS do not bind this Court, one would be hard pressed to explain why the combined weight of these judicial and administrative sources—including the IRS' instructions to its own employees—do not constitute relevant authority.

---

ancy by the entirety property for the tax liability of one spouse). See also *Benson* v. *United States*, 442 F. 2d 1221, 1223 (CADC 1971) (recognizing the Government's concession that property owned by the parties as tenants by the entirety cannot be subjected to a tax lien for the debt of one tenant); *Cole* v. *Cardoza*, 441 F. 2d 1337, 1343 (CA6 1971) (noting Government concession that, under Michigan law, it had no valid claim against real property held by tenancy by the entirety).

[9] See, *e. g.,* Internal Revenue Manual § 5.8.4.2.3 (RIA 2002), available at WESTLAW, RIA–IRM database (Mar. 29, 2002) (listing "property owned as tenants by the entirety" as among the assets beyond the reach of the Government's tax lien); *id.,* § 5.6.1.2.3 (recognizing that a *consensual* lien may be appropriate "when the federal tax lien does not attach to the property in question. For example, an assessment exists against only one spouse and the federal tax lien does not attach to real property held as tenants by the entirety"); IRS Chief Counsel Advisory (Aug. 17, 2001) (noting that consensual liens, or mortgages, are to be used "as a means of securing the Government's right to collect from property the assessment lien does not attach to, *such as real property held as a tenancy by the entirety*" (emphasis added)); IRS Litigation Bulletin No. 407 (Aug. 1994) ("Traditionally, the government has taken the view that a federal tax lien against a single debtor-spouse does not attach to property or rights to property held by both spouses as tenants by the entirety"); IRS Litigation Bulletin No. 388 (Jan. 1993) (explaining that neither the Department of Justice nor IRS chief counsel interpreted *United States* v. *Rodgers,* 461 U. S. 677 (1983), to mean that a federal tax lien against one spouse encumbers his or her interest in entireties property, and noting that it "do[es] not believe the Department will again argue the broader interpretation of *Rodgers,*" which would extend the reach of the federal tax lien to property held by the entireties); *Benson, supra,* at 1223; *Cardoza, supra,* at 1343.

## III

Finally, while the majority characterizes Michigan's view that the tenancy by the entirety property does not belong to the individual spouses as a "state law fiction," *ante*, at 276, our precedents, including *Drye*, 528 U. S., at 58–60, hold that state, not federal, law defines property interests. Ownership by "the marriage" is admittedly a fiction of sorts, but so is a partnership or corporation. There is no basis for ignoring this fiction so long as federal law does not define property, particularly since the tenancy by the entirety property remains subject to lien for the tax liability of *both* tenants.

Nor do I accept the Court's unsupported assumption that its holding today is necessary because a contrary result would "facilitat[e] abuse of the federal tax system." *Ante*, at 285. The Government created this straw man, Brief for United States 30–32, suggesting that the property transfer from the tenancy by the entirety to respondent was somehow improper, see *id.*, at 30–31, n. 20 (characterizing scope of "[t]he tax avoidance scheme sanctioned by the court of appeals in this case"), even though it chose *not* to appeal the lower court's contrary assessment. But the longstanding consensus in the lower courts that tenancy by the entirety property is *not* subject to lien for the tax liability of one spouse, combined with the Government's failure to adduce any evidence that this has led to wholesale tax fraud by married individuals, suggests that the Court's policy rationale for its holding is simply unsound.

Just as I am unwilling to overturn this Court's longstanding precedent that States define and create property rights and forms of ownership, *Aquilino*, 363 U. S., at 513, n. 3, I am equally unwilling to redefine or dismiss as fictional forms of property ownership that the State has recognized in favor of an amorphous federal common-law definition of property. I respectfully dissent.