In re Jeffrey DAHLMAN, Debtor.

Jeffrey Dahlman, Plaintiff,

v.

United States of America, Baylake Bank, Kansas Bank & Surety Company, M & I Marshall & Ilsley Bank, Defendants.

Bankruptcy No. 02–7633–8G7.
Adversary No. 02–783.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 8, 2003.

David W. Steen, David L. Schrader, David W. Steen, P.A., Tampa, FL, for Debtor/Plaintiff.

Paul I. Perez, United States Attorney, Patricia A. Willing, Assistant United

States Attorney, Tampa, FL, for Defendant, United States of America.

James T. Demarest, Quarles & Brady LLP, Naples, FL, for Defendants, Baylake Bank and Kansas Bank & Surety Company.

## ORDER ON UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AS TO DEBTOR/PLAINTIFF JEFFREY DAHLMAN

PAUL M. GLENN, Chief Judge.

THIS ADVERSARY PROCEEDING came on for hearing on the United States of America's Motion for Summary Judgment as to Debtor/Plaintiff Jeffrey Dahlman, which was filed on November 29, 2002. Jeffrey Dahlman (the "Debtor") filed a Complaint to Determine Validity and Extent of Lien on September 26, 2002. An answer was filed by the United States of America on November 6, 2002, and an answer was filed by Baylake Bank and Kansas Bankers Surety Company on November 15, 2002.

### Background

The Debtor filed his Chapter 7 petition on April 22, 2002. On his Schedule C—Property Claimed as Exempt, the Debtor listed a home located at 19 Windward Island, Clearwater, Florida, and claimed the property as exempt pursuant to Art. 10, § 4(a)(1) and FSA 222.01 and 222.02. The Debtor's spouse, Dawn Dahlman, had previously filed a Chapter 7 petition, on November 13, 2001, also claiming the property as exempt. The Debtor and his spouse, Dawn Dahlman, owned the homestead property as tenants by the entireties, and the property was located in Pinellas County, Florida.

A judgment was entered in the United States District Court for the Eastern District of Wisconsin on August 6, 1999, against Dawn Dahlman for one count of conspiracy to commit bank fraud pursuant to 18 U.S.C. § 371. In the judgment, Dawn Dahlman was sentenced to incarceration, and ordered to pay a special assessment of $100, a fine of $1,000, and restitution of $21,219.18. A notice of lien for the total amount of the judgment, $22,319.18, was filed on August 31, 1999, in the public records of Pinellas County, Florida.

A judgment was entered in the United States District Court for the Eastern District of Wisconsin on August 13, 1999, against Jeffrey Dahlman for conspiracy to commit bank fraud pursuant to 18 U.S.C. § 371 and bank fraud under 18 U.S.C. § 1344 & 2. In the judgment, Jeffrey Dahlman was sentenced to incarceration, and ordered to pay a special assessment of $200, a fine of $2,500, and restitution in an amount to be determined. On November 17, 1999, an Order was entered by the District Court establishing $3,988,115.49 as the amount of the restitution owed by Jeffrey Dahlman, and identified the entities entitled to receive restitution and their respective shares. A notice of lien for the total amount of $4,091,815.49 was filed on December 27, 1999, in the public records of Pinellas County, Florida.

Each lien was a "Lien for Fine and/or Restitution Imposed Pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996." Each was filed pursuant to 18 U.S.C. § 3613(c), which provides that a fine or an order of restitution under § 3664 of Title 18 is "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."

Prior to the filing of the Debtor's Chapter 7 case, Dawn Dahlman filed in her case a Motion to Sell Property Free and Clear of Liens and Request for Emergency

Hearing on November 16, 2001, with regard to the homestead property located at 19 Windward Island, Clearwater, Florida. Pursuant to the Order Conditionally Granting Motion to Sell Property Free and Clear of Liens entered November 27, 2001, "Any liens or interests, such as they may be, shall attach to the proceeds of the sale to the same extent and priority as they did to the Property." In addition, a trust account was to be established for the sales proceeds, with such funds "claimed by the Debtor [Ms. Dahlman] and her non-debtor husband as their exempt homestead and the account title may so designate." Prior to the Debtor's Chapter 7 case, the property was sold and the entire net proceeds to which Dawn Dahlman and Jeffrey Dahlman were entitled were placed into a trust account entitled "Dawn Dahlman or Jeffrey Dahlman, Tenants by the Entireties, Held in Trust by Charles Dittmar, Esquire, Trustee/Guardian."

### Discussion

The Debtor filed a four count complaint to determine validity and extent of liens against the United States of America, Baylake Bank, Kansas Bank & Surety Co. and M & I Marshall and Ilsley Bank. The United States of America filed a Motion for Summary Judgment on all four counts of the complaint.

Federal Rule of Bankruptcy Procedure 7056(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### Count I

■ Count I of the Debtor's Complaint to Determine Validity and Extent of Liens states: "This is an action seeking a judgment declaring that the criminal liens against the Plaintiff and Dawn Dahlman are invalid against tenancy by the entireties property." In addition, paragraph 18 of the complaint states: "Alternatively, the lien against the tenancy by the entireties property should be limited to no more than the joint amount, defined by the lien amount imposed against Dawn Dahlman, the maximum amount, if any, being $22,319.18."

In its Motion for Summary Judgment, the United States of America points out that a 2002 Supreme Court case, *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), held that a federal tax lien could attach to property held as a tenant by the entirety. The Supreme Court explained the interplay between federal and state law with regard to this question as follows:

> Whether the interests of respondent's husband in the property he held as a tenant by the entirety constitutes "property and rights to property" for the purposes of the federal tax lien statute, 26 U.S.C. § 6321, is ultimately a question of federal law. The answer to this federal question, however, largely depends upon state law. The federal tax lien statute itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." [citations omitted] Accordingly "[w]e look initially to state law to determine what rights the taxpayer has in the property the government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." [citation omitted]

*Id.* at 278, 122 S.Ct. 1414. In that case, the Supreme Court concluded:

[T]he respondent's husband's interest in the entireties property constituted "property" or "rights to property" for the purposes of the federal tax lien statute.

*Id.* at 288, 122 S.Ct. 1414.

At the hearing on the Motion for Summary Judgment, counsel for the Debtor stated: "So we would concede on count one that *Craft* is controlling, that the lien does attach, but we would contest as to the as to the [sic] amount of the lien." (Transcript of hearing, February 26, 2003, page 28, lines 22–25.)

As the Supreme Court determined in *Craft*, it is clear that the lien of the United States of America attached to the Debtor's interest in the property. However, the question remains as to the extent of the lien or, as counsel for the Debtor stated, the valuation of that lien. In *Craft*, the Supreme Court noted: "We express no view as to the proper valuation of respondent's husband's interest in the entireties property, leaving this for the Sixth Circuit to determine on remand." *Id.* at 289, 122 S.Ct. 1414.

Accordingly, the Court determines that the lien of the United States of America is a valid lien against the Debtor's interest in the property, and partial summary judgment should be granted to the United States on Count I. The extent of the lien, or the proper valuation of the Debtor's interest in the property, remains to be determined.

**Counts II and III**

■ With regard to Count II and Count III of the Debtor's Complaint to Determine Validity and Extent of Liens, the recitations in these counts question the amounts that were credited by the United States Attorney's office for the Eastern District of Wisconsin against the restitution payable by the Debtor and Ms. Dahl-

man. The Debtor alleges that if "assets or other credits" received by the United States (and Baylake Bank) were properly accounted for, the criminal and civil liens would be reduced or removed as paid in full.

The Debtor entered into a plea agreement with the United States of America on April 7, 1999, whereby he pled guilty to Counts One and Two of his indictment, conspiracy to commit bank fraud in violation of 18 U.S.C. § 371, and bank fraud in violation of 18 U.S.C. § 1344 & 2. An order of forfeiture was entered into on August 11, 1999, by the United States District Court for the Eastern District of Wisconsin whereby certain listed property was designated as proceeds of bank fraud. The judgment against the Debtor was entered on August 13, 1999, including provisions for imprisonment, supervised release, fine, and restitution in an amount to be determined. On November 17, 1999, the District Court determined that the victims of the Debtor were entitled to restitution in the total amount of $3,988,115.49.

On November 29, 1999, the Debtor appealed the final restitution order entered on November 17, 1999. However, on January 9, 2001, the Debtor filed a motion to dismiss his appeal with prejudice, which included the following acknowledgment executed by the Debtor: "I have been informed of my attorney's intention to move to dismiss my appeal. I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal."

■ A criminal restitution order is in the nature of a sentence, and the District Court is "vested with wide discretion" in determining the sentence for the convicted criminal defendant. *United States v. Anglian,* 784 F.2d 765, 768 (6th Cir.1986).

The bankruptcy court will not affect the restitution and forfeiture determined by

the District Court for the Eastern District of Wisconsin. The Eleventh Circuit has stated: "The basic error of the bankruptcy judge was to misjudge the width of his turf. The purpose of bankruptcy is to protect those in financial, not moral, difficulty." *Barnette v. Evans,* 673 F.2d 1250, 1252 (11th Cir.1982). State and federal courts alike have alluded to the lack of jurisdiction for a bankruptcy court to interfere with criminal proceedings, including sentences of restitution. See *Bryan v. Rainwater,* 254 B.R. 273, 276 (N.D.Ala. 2000), *Washington v. Eyre,* 39 Wash.App. 141, 692 P.2d 853, 855 (1984), and *In re Button,* 8 B.R. 692, 694 (Bankr.W.D.N.Y. 1981).

In *Medlin v. Commissioner (In re Medlin),* 269 B.R. 591 (Bankr.E.D.N.C.2001), following the filing of the debtor's bankruptcy petition, the IRS initiated a post-petition criminal proceeding that resulted in the debtor's conviction on tax-related charges and an order directing the debtor to pay criminal restitution to the IRS. The debtor then filed an adversary proceeding, challenging the criminal proceedings on various grounds. The bankruptcy court stated that the debtor's challenges to a criminal proceeding simply do not fall within the bankruptcy court's jurisdiction, adding:

> Arguably, the plaintiff's most ludicrous request comes in his amended complaint (the fifth cause of action), in which he asks this court to enter a declaratory judgment informing the district court that presided over the criminal case that this obligation was satisfied before the order was entered. Arguments concerning the satisfaction of that order must be directed to the court that entered it.

*Id.* at 594, n. 1.

The United States of America's motion for summary judgment as to Counts II and III of the Debtor's Complaint to Determine Validity and Extent of Liens should be granted.

## Count IV

■ Count IV of the Debtor's complaint alleges that the restitution order and resulting liens are void since restitution was not ordered within ninety (90) days of sentencing as required by 18 U.S.C. § 3664(d)(5). The Seventh Circuit Court of Appeals addressed this issue in its decision of February 18, 2003, and denied the Debtor's challenge to restitution as not having been imposed within 90 days of sentencing. In accordance with the Seventh Circuit Court of Appeals' denial of the Debtor's challenge to the restitution order on this issue, it is appropriate to grant the United States of America's motion for summary judgment on Count IV of the complaint. Of course, if the Seventh Circuit had not entered this order, this Court would nevertheless have granted the motion for summary judgment by the United States, for the same reasons as the motion is granted with respect to Counts II and III.

## Conclusion

For the reasons stated above, it is appropriate to grant partial summary judgment in favor of the United States as to Count I of the Debtor's Complaint to Determine Validity and Extent of Liens, and to grant the motion for Counts II, III and IV of the complaint.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment of the United States of America is granted in part and denied in part.

2. The Motion for Summary Judgment with respect to Count I is granted as to

the validity of the lien in favor of the United States of America against the Debtor's interest in tenancy by the entireties property, but is denied with respect to the extent of such lien.

3. The Motion for Summary Judgment with respect to Counts II, III, and IV is granted, and Counts II, III, and IV of the Complaint to Determine Validity and Extent of Liens are dismissed as to the defendant, United States of America.