**UNITED STATES of America, Plaintiff,**

v.

**Krishnalalla PERSAUD, a/k/a K.D.N. Persaud, a/k/a Kris Persaud, individually and as trustee; et al., Defendants.**

**No. 6:02–CV–1528–ORL–22JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 8, 2005.

---

Carol Koehler Ide, U.S. Dept. of Justice, Washington, DC, Ralph E. Hopkins, U.S. Attorney's Office, Orlando, FL, for Plaintiff.

Krishnalalla Persaud, Orlando, FL, pro se.

Laura Kristin Sundberg, Akerman Senterfitt–Orlando, Michael A. Paasch, Mateer & Harbert, P.A., John Gerald Delancett, Law Offices of John Delancett, PL, Orlando, FL, for Defendants.

## ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the following motions filed by Defendant Sabeta Persaud: Motion to Alter or Amend Final Judgment (Doc. 172), Motion to Set Aside Judgment as Void (Doc. 176), and Motion for Relief From Final Judgment (Doc. 177). After carefully considering these motions, the Court determines that they are due to be granted. The Court also considers, and denies, Defendant Krishnalalla Persaud's Motion to Exempt Homestead Property From Order Dated August 19, 2005 (Doc. 185).

## II. BACKGROUND AND PROCEDURAL HISTORY

The principal thrust of the United States' initial claims in this case was that Sabeta Persaud's husband, Krishnalalla ("Kris") Persaud, owed back taxes and that he fraudulently conveyed his interests in several real properties to third parties, including Sabeta Persaud. In addition to Kris Persaud, the United States sued Sabeta Persaud, two entities alleged to be Persaud's nominees, and others who might claim an interest in the subject real properties.

Among other things, the Government alleged that Kris Persaud had fraudulently conveyed his interest in real property located at 8236 Conroy–Windermere Road ("Parcel I") to Sabeta Persaud. Prior to the conveyance, the property had been jointly owned by Kris and Sabeta Persaud;[1] following the transaction, the property was titled in only Sabeta Persaud's name. The United States sought to set aside that transaction as a fraudulent conveyance. The Complaint did not, however, allege that Sabeta Persaud was

---

1. This was the Persauds' marital residence.

a nominee of her spouse regarding this parcel.

The United States also sought to set aside a transaction involving property located at 1137 31st Street ("Parcel V"). The Government alleged that Kris and Sabeta Persaud fraudulently conveyed the parcel, which had previously been held in both their names, to an entity known as Hindu Sanatan Dharma of America, Inc. ("Hindu Sanatan"). The United States further alleged that Hindu Sanatan was Kris Persaud's nominee. However, once again, the Complaint did not allege that Sabeta Persaud was her husband's nominee as to this property.

By way of relief, the United States sought, *inter alia*, determinations that its federal tax liens "attach to all property and rights to property of the defendant, Krishnalalla Persaud, ... including Parcels III, IV and V held by his nominees;" that "the alleged fraudulent conveyances and invalid encumbrances pertaining to parcels I, II and V shall be set aside as null and void, pursuant to Fla. Stat. §§ 726.105, 726.106;" and that "the federal tax liens of the United States upon parcels I, II, III, IV and V shall be foreclosed and the described parcels of real property be sold[.]" Doc. 1, ¶¶ 2, 3 & 5, at 19–20.

On January 2, 2003, Sabeta Persaud was served with initial process at her residence (8236 Conroy–Windermere Road). The return of such service reflected that substitute service was made by delivering a copy of the documents to Gita Persaud, Sabeta's daughter, who was 15 years of age or older. *See* Doc. 14. This method of service satisfied federal procedural requirements. *See* Fed. R.Civ.P. 4(e)(2) (providing that service on an individual may be effected by leaving copies of the summons and complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein"). Sabeta Persaud's counsel does not challenge the sufficiency of this service.

After Sabeta Persaud failed to respond, the United States applied for entry of default

against her. *See* Doc. 28. Default was duly entered on February 19, 2003. *Id.*

On February 26, 2003, a document purporting to be Sabeta Persaud's Answer to the Complaint was filed in this case. *See* Doc. 32. The document stated, "Comes now the Defendant Sabeta Persaud, in proper person, who does deny each and every allegation as described in the complaint, and now demands strict proof thereof." *Id.* The second page of the Answer bore a signature purporting to be that of Sabeta Persaud. *Id.* However, simple visual comparison reveals that the signature in the Answer is not the same as Sabeta's true signature as it appears in other documents filed in this case. *Compare* Doc. 32 *with* Docs. 106 & 173. Rather, the signature and other handwriting in Sabeta's purported Answer looks suspiciously similar to the signature and handwriting which appear in Kris Persaud's contemporaneously-filed Answer. *Compare* Doc. 32 *with* Doc. 31.[2]

Because the Clerk had already entered a default against Sabeta Persaud, her purported Answer was ineffective. On March 17, 2003, the Court entered an Order denying a motion Kris Persaud filed seeking to set aside defaults entered against certain of the defendants, including Sabeta Persaud. *See* Doc. 41.

On May 9, 2003, the United State filed an Amended Complaint. *See* Doc. 64. Its purpose in doing so was to "(1) substitute one defendant's successor in interest as a defendant; (2) add an allegation that one mortgage appears to have been satisfied; (3) include dates on which Notices of Federal Tax Lien were refiled; and (4) add two parcels of real property against which plaintiff seeks to foreclose federal tax liens." Doc. 57 at 1–2. The Amended Complaint did not amend the allegations concerning Parcels I and V. In particular, the pleading did not add any allegations that Sabeta Persaud was her husband's nominee with respect to these two parcels. However, the Amended Complaint did add allegations that Sabeta was Kris Persaud's nominee with respect to two new parcels (Parcels VI and VII).[3] By way of

---

2. Particularly telling are the handwritten telephone numbers below the signature lines in both documents.

3. These parcels are not the subject of the present motions.

relief, the Amended Complaint sought, *inter alia,* determinations that its federal tax liens "attach to all property and rights to property of the defendant, Krishnalalla Persaud, ... including Parcels III, IV, V, VI and VII held by his nominees;" that "the alleged fraudulent conveyances and invalid encumbrances pertaining to parcels I, II and V shall be set aside as null and void, pursuant to Fla. Stat. §§ 726.105, 726.106;" and that "the federal tax liens of the United States upon parcels I, II, III, IV, V, VI and VII shall be foreclosed and the described parcels of real property be sold[.]" Doc. 64, ¶¶ 2, 3 & 5, at 22.

On December 8, 2003, the United States filed a Motion for Judgment by Default Against Defendant Sabeta Persaud. *See* Doc. 86. Therein, the United States requested entry of a judgment providing that Sabeta Persaud "has no enforceable lien upon or interest in the real property subject of this action." *Id.* On December 17, 2003, the Court granted that motion, stating that it would enter a judgment at the conclusion of this case providing that Sabeta and other defaulted defendants, "do not have enforceable liens upon or interests in the real property subject of this action." Doc. 101 at 3.

On January 5, 2004, Kris Persaud filed a response to a summary judgment motion filed by the United States. With his response, he submitted an affidavit executed by Sabeta Persaud. *See* Doc. 106. The caption of the affidavit included Sabeta's name as a defendant in the case. However, in the body of the affidavit, Sabeta did not make any reference to her status as a defendant, or otherwise indicate that she knew she was a party to this action. Instead, in the first numbered paragraph, she identified herself merely as "the wife of KRISHNALALLA PERSAUD." Doc. 106, ¶ 1, at 1.

To shorten a rather long story concerning what occurred in this case following the filing of the United States' summary judgment motion against Kris Persaud, it is sufficient for present purposes to say that the Court eventually granted that motion. *See* Doc. 157. However, it is worth mentioning that in its July 1, 2005 Order granting summary judgment, the Court stated that Kris Persaud had "engaged in one delay tactic after another in an effort to prevent the United States from obtaining relief in this case." *Id.* at 12.

The July 1st Order required the United States to submit a proposed form of final judgment addressing its claims against all parties in the case. The United States complied with that directive. Accordingly, on August 19, 2005, the Court entered a Final Judgment of Foreclosure (Doc. 165) and a separate Decree of Foreclosure and Order of Sale (Doc. 166). The effect of the final judgment was to completely extinguish any interest Sabeta Persaud had in the real properties subject to suit, including Parcels I and V.

On September 2, 2005, Sabeta Persaud filed the present motions seeking relief from the final judgment. *See* Docs. 172, 176 & 177. She submitted her own affidavit (Doc. 173) supporting the motion, as well as affidavits executed by Kris Persaud (Doc. 174) and the couple's daughter, Gita (Doc. 175). The United States responded to the motions on September 13, 2005. *See* Docs. 180, 181 & 179. By Order dated September 21, 2005, the Court set an evidentiary hearing in the matter and stayed the sale of Parcels I and V. *See* Doc. 183. The hearing was conducted on October 31, 2005. Sabeta, Kris and Gita testified in that proceeding, and the Court heard argument of counsel concerning the motions.

### III. SABETA PERSAUD'S ARGUMENTS

Sabeta Persaud seeks relief from the August 19th final judgment pursuant to Federal Rules of Civil Procedure 59(e), 60(b)(4) and 60(b)(6). Rule 59(e) authorizes a party to file a motion to alter or amend a judgment within 10 days following entry of the judgment. Rule 60(b)(4) permits relief from a judgment on voidness grounds. Rule 60(b)(6) authorizes relief from judgment based on "any other reason justifying relief from the operation of the judgment."

It is important to note that Sabeta does not seek to "undo" her default status, or to alter the disposition of the properties other than Parcels I and V, or to vacate the Court's determination that the conveyances of Parcels I and V were fraudulent. Rather, she attacks only those portions of the final judgment that completely extinguish her interests in Parcels I and V. Essentially, Sabeta's posi-

tion is that undoing the fraudulent conveyances restores to her an undivided one-half interest in the properties, rather than completely divesting her of any interest in the parcels. However, she does concede that the United States may force a partition and sale of her interest.

Sabeta's challenge is two-fold. First, she argues that it would be inequitable to completely extinguish her interests in the real properties because she never even knew she was a party to this lawsuit. Consistent with the affidavit she signed supporting her motions, Sabeta testified at the evidentiary hearing that she was unaware that she was a defendant in this action until after the final judgment was entered. She also testified that she did not notice that her name appeared among the defendants listed in the caption of the affidavit she signed supporting her husband's summary judgment response. Moreover, Gita Persaud testified that she did not inform Sabeta that the suit papers had been served at the family's home, and she never discussed the fact of the lawsuit with her mother. Additionally, Kris Persaud testified, consistent with his affidavit, that he never informed Sabeta that she was a party to these proceedings, and that he essentially intercepted documents mailed to his wife concerning the case. Sabeta maintains that these circumstances constitute extraordinary circumstances warranting relief from the final judgment.

Sabeta's second argument is that the August 19th judgment is improper (and indeed void) because it exceeded the scope of the relief requested in the Complaint and Amended Complaint, thereby violating Fed. R.Civ.P. 54(c). That rule provides, in pertinent part: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed.R.Civ.P. 54(c). Sabeta points out that the Complaint and the Amended Complaint did not seek to completely extinguish her interests in Parcels I and V, they merely demanded that the fraudulent conveyances regarding those parcels be set aside. Accordingly, she maintains, the judgment divesting her of all interests in the two properties granted the United States more relief than it asked for in the Complaint and the Amended Complaint.

## IV. THE UNITED STATES' RESPONSE

At the outset, the United States asserts that the Rule 59(e) motion is untimely. In the Government's view, the event which triggered the 10-day filing period was the entry of default judgment on December 17, 2003, rather than rendition of the final judgment on August 19, 2005.

Turning to the merits, the United States urges the Court to reject Sabeta Persaud's claim that she did not know she was a party to this action. The Government relies on the fact that Sabeta was properly served with initial process through her daughter, and notes that documents subsequently filed in this action were mailed to Sabeta at her home address. Additionally, the United States argues that it did not bring this action merely to set aside fraudulent conveyances regarding the several properties, it also sued Sabeta Persaud as Kris Persaud's nominee. In that regard, counsel for the Government states:

> Sabeta Persaud also contends that this Court granted relief beyond that prayed for in the Amended Complaint. She does so by casting this action as one to set aside fraudulent conveyances. If that were the sole issue or claim for relief, she would be correct that setting aside as fraudulent a conveyance from a husband and wife holding as tenants by the entireties, to the wife, only, would return the property to the tenancy by the entireties. In accordance with *United States v. Craft*, 535 U.S. 274[, 122 S.Ct. 1414, 152 L.Ed.2d 437] (2002), the non-debtor spouse would be entitled to recover her interest in the property upon foreclosure sale. But the United States has contended, and there has been no evidence presented to the contrary over the long course of this litigation, that the record title holders of the two properties in issue in Sabeta Persaud's motion are Kris Persaud's nominees.

Docs. 179 at 7 & 180 at 7–8; *see also* Doc. 181 at 7. To make her position crystal clear, counsel for the Government states: "The United States has alleged that both Sabeta Persaud and Hindu Sanatan Dharma of America, Inc., are Kris Persaud's nominees,

that is, that they are merely holding title in his stead." Docs. 179 at 8, 180 at 8 & 181 at 7. The United States maintains that Sabeta Persaud has failed to present any evidence rebutting, and has not even bothered to contest, the allegations that she is Kris Persaud's nominee regarding the two parcels. *See* Docs. 179 at 8, 180 at 8 & 181 at 8.

## V. ANALYSIS

■ At the outset, the Court rejects the United States' untimeliness argument. The event which triggered the 10–day period for filing a Rule 59(e) motion was the entry of final judgment on August 19, 2005, not the December 17, 2003 order granting the Government's motion for a default judgment. As previously noted, Sabeta Persaud is not seeking to set aside her default status. Rather, she requests relief from the final judgment granting relief that *exceeded* what the United States was entitled to receive against a party in default. The United States seemingly concedes that if the August 19th date applies, the Rule 59(e) motion is timely. *See* Doc. 180 at 6.[4]

■ Moving to the merits, the Court must say that it is quite disturbed by the Government's conduct in this case. Despite the fact that the Complaint and the Amended Complaint did not request that Sabeta Persaud's interests in Parcels I and V be totally divested, the United States requested that very relief in its motion for default judgment. Persisting in that erroneous position, the United States later submitted a final judgment completely extinguishing Sabeta Persaud's interest in the two parcels. In doing so, the Court believes the United States took improper advantage of a defendant who had been defaulted and led this Court into error.

Rather than acknowledging the error after Sabeta Persaud filed her post-judgment motions, counsel for the United States attempted to mislead the Court by arguing that the final judgment was proper because the United States had alleged that Sabeta Persaud was her husband's nominee regarding the two parcels. That representation was false. The Complaint and Amended Complaint did not allege that Sabeta was Kris's nominee regarding these particular properties.[5] Accordingly, the Court agrees with Sabeta Persaud that the relief granted to the United States as to Parcels I and V exceeded the scope of the relief requested in the Complaint and Amended Complaint. Because the final judgment granted relief "different in kind from" that prayed for in the Government's pleadings, it violated Fed.R.Civ.P. 54(c). Under these circumstances, Sabeta is entitled to relief from those portions of the final judgment that extinguished her interests in Parcels I and V. *See Compton v. Alton S.S. Co., Inc.,* 608 F.2d 96, 102–07 (4th Cir.1979) (vacating default judgment under Rules 60(b) and 54(c) where district court granted relief not authorized by statute and unavailable under allegations of complaint).[6]

■ It would also be manifestly inequitable to enforce the challenged portions of the final judgment against Sabeta Persaud, considering she never knew she was a defendant in this case until after that judgment had been entered. *See Horn v. Intelectron Corp.,* 294 F.Supp. 1153, 1155–56 (S.D.N.Y. 1968) (setting aside default judgment under Rule 60(b) even though corporation was properly served with process, because corporate officers and agents did not have actual knowledge of lawsuit); *Huntington Cab Co. v. American Fid. & Cas. Co.,* 4 F.R.D. 496, 497–99 (S.D.W.Va.1945) (setting aside default

---

**4.** Even if the Rule 59(e) motion were untimely, "[s]uch motions may, ... be treated as Rule 60(b) motions if grounds stated would be a basis for Rule 60(b) relief." *Nisson v. Lundy,* 975 F.2d 802, 806 (11th Cir.1992). Rule 60(b)(4) and 60(b)(6) motions need only be brought "within a reasonable time." Fed.R.Civ.P. 60(b).

**5.** To make matters worse, counsel for the Government further attempted to mislead the Court at the evidentiary hearing regarding the timing of the Amended Complaint vis-a-vis entry of default against Sabeta Persaud.

**6.** In *Nisson v. Lundy,* 975 F.2d 802 (11th Cir. 1992), the Eleventh Circuit quoted *Compton* with approval (though not in the default judgment context), stating: *"Compton* held that Rule 60(b)(6) is a 'catch-all' provision, and a 'grand reservoir of equitable power to do justice in a particular case.'" 975 F.2d at 806 (quoting *Compton,* 608 F.2d at 106–07). The *Nisson* panel also stated: "Rule 60(b) is to be given a liberal and remedial construction." 975 F.2d at 807.

judgment against corporation under Rule 60(b); although substitute service on state auditor was sufficient to give court jurisdiction over defendant, state auditor did not follow correct procedure in notifying defendant of service, with the result that defendant was unaware of lawsuit).

The Court believes the testimony of Sabeta, Kris and Gita; all were credible witnesses. Considering Kris Persaud's obstructionist behavior throughout this case, the Court would ordinarily view his testimony with a healthy degree of skepticism. However, Kris's version of events is entirely consistent with the manner in which he litigated this case. In particular, the fact that Kris Persaud appears to have signed Sabeta's purported Answer lends credence to the proposition that Kris concealed the nature of this lawsuit from his wife. Moreover, because the Persauds are now estranged and separated, Kris Persaud presumably lacks the same motivation to protect his wife that he once might have had. Finally, the Court gives greater weight to Kris Persaud's testimony than it otherwise would, for the simple reason that Kris has essentially made an admission against his own interests. In stating that he hid the nature of this lawsuit from his wife and that his wife was unaware that she was a defendant herein, Kris Persaud has effectively admitted that he perpetrated a fraud on the Court when he submitted the Answer purportedly signed by Sabeta Persaud. By presenting that document to the Court, Kris created the impression that Sabeta was indeed aware of this lawsuit, and was attempting to participate in it. We now know that was not the case.

The Court recognizes that the affidavit Sabeta Persaud signed in support of her husband's summary judgment response did list Sabeta's name as a defendant in the caption of the document. *See* Doc. 106. However, there are 19 defendants listed in that caption. *Id.* It would have been easy for Sabeta Persaud to overlook her name among those listed. Some affiants might have read the entire caption, but others would not have. The Court believes that Sabeta did not.

In sum, even though Sabeta Persaud was validly served with initial process and defaulted by the Clerk, it would be both legally improper and manifestly unfair under the present circumstances to deny her the relief she requests. The United States has overreached in this case and obtained relief against Sabeta Persaud that it was not entitled to. Moreover, Sabeta was not even aware she was a defendant in this case until after the final judgment granting improper relief had been entered, due to the simple fact that her husband concealed the true nature of this lawsuit from her. Accordingly, the Court will grant Sabeta Persaud's post-judgment motions, will vacate the August 19, 2005 Final Judgment of Foreclosure and Decree of Foreclosure and Order of Sale, and will require the Government to prepare and submit the judgment that should have been entered in the first place.[7]

## VI. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Defendant Sabeta Persaud's Motion to Alter or Amend Final Judgment (Doc. 172), filed September 2, 2005, is GRANTED.

2. Defendant Sabeta Persaud's Motion to Set Aside Judgment As Void (Doc. 176), filed September 2, 2005, is GRANTED.

3. Defendant Sabeta Persaud's Motion for Relief From Final Judgment (Doc. 177), filed September 2, 2005, is GRANTED.

4. The Final Judgment of Foreclosure (Doc. 165) and Decree of Foreclosure and Order of Sale (Doc. 166), both entered on August 19, 2005, are VACATED.

5. On or before November 21, 2005, the United States shall submit a proposed Amended Final Judgment of Foreclosure and a proposed Amended Decree of Foreclosure and Order of Sale consistent with the ruling set forth herein. Defendant Sabeta Persaud

---

7. The Court rejects the Government's suggestion that granting Sabeta Persaud's motions will necessitate reopening discovery. The United States had ample opportunity to allege that Sabeta was her husband's nominee as to Parcels I and V, but

it failed to do so. The deadline for seeking leave to amend the pleadings expired long ago. Hence, further discovery is neither warranted nor necessary.

shall have until December 9, 2005, to raise any objections to the proposed Amended Final Judgment of Foreclosure and the proposed Amended Decree of Foreclosure and Order of Sale.

6. Defendant Krishnalalla Persaud's Motion to Exempt Homestead Property From Order Dated August 19, 2005 (Doc. 185), filed September 22, 2005, is DENIED. A delinquent taxpayer's interest in tenancy-by-the-entireties property is not exempt from a federal income tax lien, and such a lien may be foreclosed by the judicial sale of homestead property. *See United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002); *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *United States v. Frein*, No. 6:04–CV–182–ORL22–DAB, 2005 WL 518980 (M.D.Fla. Jan.26, 2005) (Report and Recommendation, Baker, Mag. J.).[8]

---

8. The undersigned judge subsequently adopted Magistrate Judge Baker's Report and Recommendation. *See United States. v. Frein*, No. 6:04–CV–182–ORL22–DAB, 2005 WL 697429 (M.D.Fla. Feb.15, 2005).

