**In re Daniel Neal MURRAY, Debtor.**

No. 03–8739.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 13, 2004.

Louis A. Frashuer, Johnson and Johnson, Attorneys at Law, P.A., Jacksonville, FL, for Debtor.

Bruce T. Russell, Washington, D.C., for Internal Revenue Service.

Mamie L. Davis, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Objection to Claim 7 of the Internal Revenue Service (the "IRS"). The Court conducted a hearing on May 5, 2004 at which the parties filed a Stipulation of Facts. The parties requested permission to submit memoranda of law in lieu of oral argument. Upon the Stipulation of Facts and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor, a permanent resident of the state of Florida, filed a Chapter 13 bankruptcy petition on August 27, 2003 (the "Petition Date"). Debtor and his wife have maintained their homestead residence at 2022 Alachua Drive, Fernandina Beach, Florida since 1982. Debtor and his wife own their homestead residence (the "Property") jointly as tenants by the entirety as evidenced by a warranty deed dated November 11, 1982 and recorded in the Official Records of Nassau County, Florida. (Ex. A to Stip.) The fair market value of the Property is $69,673.00. The Property is encumbered by a purchase money mortgage dated November 30, 1982 issued to Barnett Bank of Nassau County and subsequently assigned to Midfirst Bank. (Ex. B to Stip.) As evidenced by Midfirst Bank's Claim 3 in the case, the unpaid balance as of the Petition Date was $30,374.36. (Ex. B to Stip.)

The fair market value of Debtor's interest in an unimproved parcel of real property located in Hinesville, Georgia (the "Camping Lot") and Debtor's interest in tangible personal property subject to Notices of Federal Tax lien is $25,640.71. (Comp. Ex. D to Stip.) The Internal Revenue Service (the "IRS") filed a proof of claim reflecting a secured claim of $65,646.60. (Ex. C to Stip.) The IRS' secured claim is evidenced by three Notices of Federal Tax Lien filed in the Official Records of Nassau County in the respective amounts of $38,608.56; $1,196.10; and $16,218.73. (Ex. D. to Stip.) Debtor's wife has not filed bankruptcy and is not subject to the Notices of Federal Tax Lien.

Debtor and his wife were married when they purchased the Property and have continually maintained their marital status. Debtor and his wife have not listed the Property for sale. Neither Debtor nor

Debtor's wife has expressed an intention to sell the Property in the foreseeable future.

Pursuant to § 20.2031–7, Regulations of the Internal Revenue Service, life estates in certain assets are valued using Table S contained in Publication 1457 utilizing 120% of the Annual Mid–Term Applicable Federal Rates published for the month of valuation. (Ex. E. to Stip.) The 120% Annual Mid–Term Applicable Federal Rate for August 2003, the month of the Petition Date was 3.25% as evidenced by Revenue Ruling 2003–94, 2003 WL 21661888, Table 1. (Ex. F to Stip.) Debtor's date of birth is September 11, 1956. Debtor's wife's date of birth is May 27, 1955.

Debtor asserts that the secured portion of Claim 7 is overstated and the general unsecured portion is understated. Debtor argues that the value of his interest in the Property is either zero or some amount between $2,912.00 and $3,663.00. Debtor contends that the secured portion of the claim is $25,640.71, the sum of the value of Debtor's interest in the Camping Lot and the tangible personal property. The IRS argues that the value of Debtor's interest in the Property is $19,649.27, 50% of the Property's equity. The IRS asserts that the secured portion of its claim is $45,289.98, the sum of $25,640.71 and $19,649.27.

### CONCLUSIONS OF LAW

■ The issue before the Court is the value of Debtor's interest in the Property. A tenancy by the entireties is a form of property ownership, which can only exist between a husband and wife. *Beal Bank, SSB v. Almand & Associates, Inc.*, 780 So.2d 45, 51 (Fla.2001). "When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it 'per tout', meaning that each spouse holds the 'whole or the entirety, and not a share, moiety, or divisible part'. Thus, property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole." *Id.* at 53. (Internal citations omitted). In *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) the Supreme Court held that a federal tax lien attaches to a taxpayer's rights in property held as tenancy by the entireties.[1] However, the Court did not determine the value of the taxpayer's interest in the property and did not set forth any guidance as to how such a determination is to be made.

■ Section 506 of the Bankruptcy Code governs the valuation of secured claims in bankruptcy. The Supreme Court in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) held that the standard for valuation in a Chapter 13 case when a debtor opts to retain collateral over a creditor's objection is replacement value. The Court noted that the replacement value standard "distinguishes retention from surrender and renders meaningful the key words 'disposition or use'" found in § 506(a). *Id.* at 962, 117 S.Ct. 1879. The court defined replacement value as "the price a willing buyer in the debtor's trade, business, or situation would pay to a willing seller to obtain property of like age and condition". *Id.* at 959, 117 S.Ct. 1879. "In sum, under § 506(a), the vale of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like

---

1. Prior to the *Craft* decision, it was well settled in Florida that only joint creditors of both a husband and wife could attach tenancy by the entireties property. *See Beal Bank*, 780 So.2d at 53.

asset for the same 'proposed...use.'" *Id.* at 965, 117 S.Ct. 1879.

Initially, Debtor argues that his interest in the Property has either no value or only a nominal value because of its negligible market value to a potential third-party buyer. However, Debtor later concedes that marketability is not a consideration in determining his interest in the Property because he has opted to retain his interest rather than surrender it. Alternatively, Debtor argues that the value of his interest in the Property should be determined by: 1) referring to joint life actuarial tables to determine his proportionate interest in the Property and 2) discounting the actuarial value to reflect restrictions on his use and enjoyment of the Property.

■ The Court turns first to the use of joint life actuarial tables to determine Debtor's proportionate interest in the Property. The IRS argues that such an approach invites considerable speculation about the future and is administratively less convenient than a 50% convention. The use of joint life actuarial tables takes into account the life expectancies of a husband and wife in determining the value of their respective survivorship interests in tenancy by the entireties property. *See In re Basher,* 291 B.R. 357, 364 (Bankr. E.D.Pa.2003). Although the court in that case concluded that the use of joint life

actuarial tables was appropriate, the debtors failed to produce evidence to make such an adjustment. The Ninth Circuit Court of Appeals affirmed a bankruptcy court decision valuing a debtor's interest in tenancy by the entireties property by reference to joint life actuarial tables. *Pletz v. United States,* 221 F.3d 1114 (9th Cir. 2000).[2] Other courts have rejected the use of actuarial tables or life expectancies, instead adopting a 50% convention. *See Popky v. United States,* 326 F.Supp.2d 594, 603 (E.D.Pa.2004) (stating that the use of actuarial tables "relies on a speculative prediction that both spouses will have an average life span and it neither accounts for the health of the spouses nor the likelihood of divorce or a sale of the property with the consent of both spouses which could break up the tenancy by the entireties"); *See also In re Gallivan,* 312 B.R. 662 (Bankr.W.D.Mo.2004). Despite its administrative inconvenience, the Court holds that the value of a debtor's interest in tenancy by the entireties property must be determined by reference to joint life actuarial tables. Debtor provided an expert report which values Debtor's proportionate interest in the Property at 47.23% of its current joint value and Debtor's wife's proportionate interest at 52.77% of the Property's current value. The Court will adopt Debtor's expert's calculation.[3]

2. Unlike Florida law, Oregon law permits a creditor of one spouse to attach that spouse's interest in tenancy by the entireties property.

3. The parties filed simultaneous memoranda on July 26, 2004. Along with his memoranda, Debtor filed an expert report which determined the respective proportionate values of the interests of Debtor and Debtor's wife. The IRS indicated in its memorandum that, in the event the Court relied on an expert report proffered by Debtor and adopted a method valuing the IRS' secured claim at an amount less than 50% of the Property's equity, the IRS requested an additional thirty days from the date of the ruling to furnish its own expert

report, to introduce testimony concerning the proper application of the expert's method, or to challenge the approach taken in the expert report. On August 25, 2004 the Court entered Order on the Filing of an Expert Report of Request for a Hearing (the "Order"). The Order permitted the IRS to file its own expert report or to request a hearing concerning Debtor's expert report within fifteen days of the date of the Order. The IRS did not file its own expert report and did not request a hearing concerning Debtor's expert report.

Given these allocation percentages, the value of Debtor's proportionate interest in the Property is $17,720.00.[4]

■ Additionally, Debtor urges the Court to apply restrictive use discounts to Debtor's proportionate interest in the Property. On one hand, Debtor concedes that the marketability of the Property is not a factor in determining value because he has opted to retain the property rather than surrender it. On the other hand, Debtor argues that restrictions on the Property's alienation resulting from its ownership as a tenancy by the entireties reduce its replacement value because an individual in Debtor's situation would be willing to pay less for like property. In *In re Hermann*, 224 B.R. 101 (Bankr.D.Minn. 1998) the court addressed a similar issue. In that case the IRS' claim was secured by a lien against the debtor wife's joint tenancy interest in the debtors' homestead. The court noted that because of the debtor wife's inability to unilaterally sever the joint interest[5], under Minnesota law the debtor wife's interest was a right of possession and a right of survivorship of the debtor husband's interest. The debtors argued that the debtor wife's interest had no value. Relying on *Rash's* definition of replacement value and its emphasis on valuation from a debtor's perspective, the court rejected the debtors' argument stating:

> Valuation is from the debtor's perspective, not from the creditor's. It is not based on what a dissimilar stranger might be willing to pay for the property...There can be no willing buyer in

[the debtor wife]'s situation to measure replacement value to her, since the benefits of joint tenancy ownership of homestead property by spouses is unique to the spouses. Indeed, [the debtor wife] is incapable of replacing her interest herself without the cooperation of [the debtor husband]. But that does not mean that her interest in the property has no replacement value to [the debtor wife]. The uniqueness of her interest and its irreplaceable nature enhance its value to her rather than detract from it.

The court found that the debtors' evidence demonstrated a lack of value of the debtor wife's interest to others, but not a lower replacement cost to her. The court held that the replacement cost to the debtor wife was half of the equity in the property.[6] The Court agrees with the reasoning set forth in *Hermann* and finds that restrictions on the Property's alienation resulting from its ownership as a tenancy by the entireties demonstrate a lack of value of Debtor's interest in the Property to others but not a lower replacement cost to Debtor. Accordingly, the Court declines to apply restrictive use discounts to Debtor's proportionate interest in the Property in order to determine its replacement value. The value of Debtor's interest in the Property and the amount to which the IRS' lien attaches is $17,720.00.

## CONCLUSION

The value of Debtor's interest in the Property must be determined by reference to joint life actuarial tables. Restrictions on the Property's alienation resulting from

---

4. This calculation is obtained by multiplying $69,673.00, the fair market value of the property, by 47.23%, Debtor's proportionate interest in the property, and reducing that figure ($32,907.00) by $15,187.00, half of the mortgage obligation.

5. The debtor wife was unable to unilaterally sever the joint tenancy because the parties were jointly and severally liable on a mortgage note.

6. The debtors did not suggest and the court did not address the use of actuarial tables to value the debtor wife's survivorship interest.

its ownership as a tenancy by the entireties demonstrate a lack of value of Debtor's interest in the Property to others, but not a lower replacement cost to Debtor. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.