**UNITED STATES of America,**
**Plaintiff,**

v.

**Ronald S. BARCZYK and Deborah A. Barczyk, Defendants.**

**Case No. 09–10881.**

United States District Court,
E.D. Michigan,
Southern Division.

March 24, 2010.

Matthew Von Schuch, Washington, DC, for Plaintiff.

Fred A. Foley, Erlich, Foley, Birmingham, MI, for Defendants.

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF THE UNITED STATES

GEORGE CARAM STEEH, District Judge.

## I. INTRODUCTION

The United States sued Defendants Ronald and Deborah Barczyk to recover certain federal taxes owed by Mr. Barczyk. Before the Court are Mrs. Barczyk's Motion for Summary Judgment as to Count II of the Complaint (Dkt. # 27), and the Government's Motion for Summary Judgment (Dkt. # 28).

For the following reasons, the Court **GRANTS** the Government's motion for summary judgment and **DENIES** Mrs. Barczyk's motion.

## II. BACKGROUND

Since 1979, Mr. and Mrs. Barczyk own a residence at 6091 Niles Drive, in Troy, Michigan ("the Niles Property"), as tenants by the entireties. The Niles Property is free and clear of debt, and, according to Defendants, worth approximately $200,000.

From 1996 to 2006, inclusive, Mr. and Mrs. Barczyk filed individual federal tax returns under the status of "married filing separately." During these years, Mr. Barczyk failed to pay large amounts of federal income taxes. As a result, several tax liens were created in favor of the United States, which attached to all of Mr. Barczyk's property and property rights, including the Niles Property.

In March 2009, the Government brought this action to reduce Mr. Barczyk's tax debt to judgment (Count I), and foreclose

the liens that arose by virtue of this debt (Count II). Specifically, the Government seeks to have the Niles Property foreclosed and sold, with proceeds distributed according to the parties' respective interests.

On September 21, 2009, this Court entered a default judgment against Mr. Barczyk, in the amount of $528,771.55 plus statutory interest and accruals until paid (Dkt. # 17). Therefore, the only remaining issue is the Government's request to foreclose and sell the Niles Property (Count II).

On December 3, 2009, Mrs. Barczyk filed this motion for summary judgment. The Government responded with its motion on December 18, 2009. The motions are fully briefed, and the Court heard argument on March 2, 2010.

## III. APPLICABLE LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cox v. Ky. Dept. of Transp.,* 53 F.3d 146, 149 (6th Cir.1995).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law.' " *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir.2003) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Redding,* 241 F.3d at 532. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir.2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also McLean v. 988011 Ont., Ltd.,* 224 F.3d 797, 800 (6th Cir.2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson,* 477 U.S. at 248, 252, 106 S.Ct. 2505. Rather, there must be evidence on which a jury could reasonably find for the nonmovant. *McLean,* 224 F.3d at 800 (*citing Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

### B. The Federal Tax Lien Statute

The United States Government has a number of tools at its disposal to collect

delinquent taxes. Among these are §§ 6321 and 7403 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6321, 7403.

When someone fails to pay a tax after a demand, § 6321 creates a lien in favor of the United States "upon all property and rights to property, whether real or personal," belonging to that person. Once the lien attaches, the Government may enforce it by filing a civil action in district court to force the sale of the attached property. § 7403(a). The statute requires that all third parties claiming interest in the property be joined in the action, in order for the court to rule on the merits of their claims. § 7403(b), (c). If the Government prevails, the court must decree a sale of the property and order the proceeds distributed among the parties according to their interests. § 7403(c).

■ "[T]he purpose of the federal tax lien statute [is] to insure prompt and certain collection of taxes due the United States from tax delinquents." *United States v. Sec. Trust & Sav. Bank*, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53 (1950). The Supreme Court has several times remarked on the breadth of the statute, which "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (citation omitted). *See also Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (1945) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.").

■ A judicial sale under § 7403 is a proceeding *in rem*. This means that—
[t]he purchaser receives a complete new title and not just somebody's interest. The court finds the state of the title to the real estate in question, orders it sold if the United States has a lien on it, and divides the proceeds accordingly. All

prior interests are cut off and the title starts over again in the new purchaser. *United States v. Rodgers*, 461 U.S. 677, 695, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (*quoting* Rogge, *The Tax Lien of the United States*, 13 A.B.A.J. 576, 577 (1927)).

## C. Michigan Law on Tenancies by the Entirety

■ Tenancy by the entirety is a unique sort of joint ownership that is only available to married persons. *United States v. Craft*, 535 U.S. 274, 280, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). In *United States v. Craft*, the Supreme Court summarized the main characteristics of Michigan's law on tenancies by the entirety:

Michigan's version of the estate is typical of the modern tenancy by the entirety.... Michigan characterizes its tenancy by the entirety as creating no individual rights whatsoever: "It is well settled under the law of this state that one tenant by the entirety has no interest separable from that of the other.... Each is vested with an entire title." And yet, in Michigan, each tenant by the entirety possesses the right of survivorship. Each spouse ... may also use the property, exclude third parties from it, and receive an equal share of the income produced by it. Neither spouse may unilaterally alienate or encumber the property, although this may be accomplished with mutual consent. Divorce ends the tenancy by the entirety, generally giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise.

*Id.* at 281–82, 122 S.Ct. 1414 (*quoting Long v. Earle*, 277 Mich. 505, 517, 269 N.W. 577, 581 (1936)) (other citations omitted).

In *Craft*, the Supreme Court held that federal tax liens under 26 U.S.C. § 6321

may attach to property held by a delinquent taxpayer and his nondelinquent spouse as tenants by the entireties. Therefore, there is no dispute that the liens on Mr. Barczyk's property have also attached to his interest in the Niles Property.

## IV. ANALYSIS

Mrs. Barczyk does not dispute that federal tax liens have attached to her husband's interest in the Niles Property. However, she contends that a judicial sale would illegally deprive her of the survivorship interest vested in entireties tenants under Michigan law. Alternatively, she argues that her interest in the Niles Property exceeds half of its value. The Government responds that Mrs. Barczyk's survivorship interest is not a barrier to selling the Niles Property, and that she is entitled to no more than half of the proceeds from a sale.

### A. Applicable Supreme Court Precedent

The parties' arguments revolve around two Supreme Court cases. In *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the Court discusses whether the Government can force the sale of property in which a delinquent taxpayer shares interest with his unindebted spouse. In *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), the Court addresses whether federal tax liens can attach to property owned in tenancy by the entirety by the delinquent taxpayer and his unindebted spouse.

#### 1. *United States v. Rodgers*

In *Rodgers*, a delinquent taxpayer and his wife owned property under Texas's homestead law. 461 U.S. at 687, 103 S.Ct. 2132. Homestead law gives spouses a separate and undivided possessory interest in property. *Id.* at 685, 103 S.Ct. 2132. The Government filed suit under 26 U.S.C. § 7403(a) to foreclose its lien on the property, but Mrs. Rodgers argued foreclosure could not occur because she continued to hold a homestead interest in the property. *Rodgers*, 461 U.S. at 687–88, 103 S.Ct. 2132. The Fifth Circuit ruled that the United States could not foreclose tax liens against homestead property "for as long as the nontaxpayer spouse maintains his or her homestead interest under state law." *United States v. Rogers*, 649 F.2d 1117, 1125 (5th Cir.1981) (footnote omitted).

The Supreme Court reversed, and held that: (1) federal tax liens may attach to property that cannot be unilaterally alienated; (2) § 7403 allows the Government to seek, and the district court to order, the judicial sale of such property; and (3) if the property is sold, the nondelinquent spouse must receive complete compensation of her interest from the proceeds of the sale. *Rodgers*, 461 U.S. at 680, 103 S.Ct. 2132.

#### 2. *United States v. Craft*

In *Craft*, the Supreme Court considered whether federal tax liens imposed pursuant to 26 U.S.C. § 6321 may attach to property owned by a delinquent taxpayer and his or her spouse as tenants by the entireties. 525 U.S. at 276, 119 S.Ct. 693. The Court began by describing the different roles of state and federal law in determining what constitutes property for tax lien purposes:

> Whether the interests of respondent's husband in the property he held as a tenant by the entirety constitutes "property and rights to property" for the purposes of the federal tax lien statute, 26 U.S.C. § 6321, is ultimately a question of federal law. The answer to this federal question, however, largely depends upon state law. The federal tax lien statute itself "creates no property rights but merely attaches consequences, federally defined, to rights cre-

ated under state law." Accordingly, "we look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation" *Id.* at 278, 119 S.Ct. 693 (*quoting United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *Drye v. United States,* 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)) (other citation omitted).

The Court reviewed Michigan's law on tenancies by the entirety and determined that each spouse possesses "property and rights to property" for purposes of § 6321. *Id.* at 282–85, 119 S.Ct. 693. Thus, the Court held, federal tax liens may attach to one spouse's interest in entireties property. *Id.* at 288, 119 S.Ct. 693. However, the Court left the Sixth Circuit to determine, on remand, the proper valuation of each spouse's interest. *Id.* at 289, 119 S.Ct. 693. Because the parties in *Craft* subsequently reached a settlement, the method of valuing each spouse's interest remained undecided.

### B. Enforcement of Tax Liens on Tenancies by the Entirety

The parties agree that, pursuant to 26 U.S.C. § 6321 and *Craft,* federal tax liens have attached to Mr. Barczyk's interest in the Niles Property. However, they differ on whether and how liens on entireties property can be enforced.

The Government contends that *Rodgers* applies to tenancies by the entirety in the same manner as to property held under Texas's homestead law. The Government reasons that, since a judicial sale under § 7403 is a proceeding *in rem, Rodgers,* 461 U.S. at 695, 103 S.Ct. 2132, this Court has the power to extinguish all pre-exist-

ing interests in the Niles Property, including Mrs. Barczyk's survivorship interest.

Mrs. Barczyk responds that the Government's interpretation of *Rodgers* is too expansive. She argues that *Rodgers* applies only to forms of joint ownership similar to Texas's homestead law, but not to tenancies by the entirety. Mrs. Barczyk reasons that, just as *Craft* analyzes state law to determine whether federal tax liens can attach to property held in tenancy by the entirety, this Court must interpret state law to determine how to enforce such liens.

Mrs. Barczyk's argument conflates the different analyses used to determine whether a lien attaches to property, and how to enforce it. The former requires consideration of state law; the latter does not.

■ For attachment to occur, the target property must be subject to the tax lien statute. However, "the federal tax lien statute ... creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *Craft,* 535 U.S. at 278, 122 S.Ct. 1414. Since property and property rights are defined under state law, courts must establish the nature of the taxpayer's rights to the property under state law. *Id.* at 278, 282–84, 122 S.Ct. 1414. If these state-defined rights constitute "property" or "rights to property" under § 6321, the lien attaches. *Id.* at 278, 284–85, 122 S.Ct. 1414.

■ Up to this point, state and federal law are closely enmeshed. However, "[o]nce state law determines that a property interest exists, federal law dictates the tax consequences." *Spotts v. United States,* 429 F.3d 248, 251 (6th Cir.2005) (citations omitted). This means that, when enforcing a lien under § 7403, courts look solely to federal law.

*Craft* and *Rodgers* nicely illustrate the two stages of this process, and the differ-

ent roles of state and federal law in each. In *Craft,* the question is whether, under § 6321, federal tax liens can attach to a spouse's interest in property held by the entirety. The Supreme Court dissects Michigan law to assess whether, in aggregate, the rights of entireties tenants amount to property, or property rights. *Craft,* 535 U.S. at 281–85, 122 S.Ct. 1414. The Court concludes in the affirmative; therefore, the delinquent taxpayer's interest in the property is subject to federal law, and the lien may attach.

By contrast, the issue in *Rodgers* is whether § 7403 allows the Government to force the sale of a property in which the delinquent taxpayer and his wife have a joint interest. *Rodgers* mentions state law in discussing the background of the case, 461 U.S. at 684–86, 103 S.Ct. 2132, but when the Court turns to the substance of the issue, the analysis focuses exclusively on the language of the federal statute. *Id.* at 691–97, 103 S.Ct. 2132. Indeed, the Court's conclusion leaves no room for state law:

> [W]e must read *the statute* to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any "claim or interest" in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution.

*Id.* at 693–94, 103 S.Ct. 2132 (emphasis added). Furthermore, the Court soundly rejects the notion that the property rights of a nondelinquent third party, as defined by state law, can defeat the enforcement of a federal tax lien:

> If § 7403 is intended, as we believe it is, to reach the entire property in which a delinquent taxpayer has or had any "right, title, or interest," then state-created exemptions against forced sale

should be no more effective with regard to the entire property than with regard to the "right, title, or interest" itself. No exception of th[is] sort ... appears on the face of the statute, and we decline to frustrate the policy of the statute by reading such an exception into it.

*Id.* at 701, 103 S.Ct. 2132 (citations and footnote omitted).

. Despite *Rodgers's* holding that state law plays no role in the enforcement of federal tax liens, Mrs. Barczyk argues her case is distinguishable, because it involves property claimed as tenancy by the entirety, not as homestead under Texas law.

Mrs. Barczyk relies on an argument between Justice Blackmun, who dissented in *Rodgers,* and the majority opinion. Justice Blackmun argued that homestead law gives unindebted co-owners an indestructible right to preclude the Government from selling their property, *id.* at 713, 103 S.Ct. 2132, and opined that tenancies by the entirety confer the same privilege. *Id.* at 719–20, 103 S.Ct. 2132 (Blackmun, J., dissenting). Writing for the majority, Justice Brennan rejected the comparison, stating:

> [T]enancies by the entirety pose a problem quite distinct from that at issue in the case of homestead rights. The basic holding of the line of cases mentioned by the dissent was, not merely that interests in a tenancy by the entirety could not be sold to satisfy a tax debt of one spouse, but that, *as a result of the peculiar legal fiction governing tenancies by the entirety in some States, no tax lien could attach in the first place because neither spouse possessed an independent interest in the property* .... In the homestead context, by contrast, there is no doubt, even under state law, that not only do both spouses (rather than neither) have an independent interest in the homestead property, but that a federal tax lien can at least attach to each of those interests.

*Id.* at 702 n. 31, 103 S.Ct. 2132 (citations omitted) (emphasis added).

Mrs. Barczyk argues that, by describing tenancies by the entirety as posing "a problem quite distinct from that ... of homestead rights," the *Rodgers* majority categorically proscribed its holding from applying to tenancies by the entirety.

This Court disagrees. When *Rodgers* was decided, in 1983, the Supreme Court had not yet determined whether federal tax liens could attach to a single spouse's interest in entireties property. Two decades later, *Craft* resolved the attachment issue, but did not discuss enforcement under § 7403. Due to this accident of history, the Supreme Court never explicitly stated whether liens on entireties property can be enforced. By itself, however, this silence does not mean that *Rodgers* is inapplicable to tenancies by the entirety.

■ Having closely scrutinized *Rodgers*, this Court finds that its rationale extends to tenancies by the entirety. The language of *Rodgers* is nearly-unequivocal, except for the paragraph upon which Mrs. Barczyk relies. But even there, the Supreme Court's hesitation is not over whether federal tax liens on entireties property are enforceable, but whether such liens attach in the first place. Since this is a question of attachment under § 6321, the answer necessarily involves state law, specifically "the peculiar legal fiction governing tenancies by the entirety ..., [pursuant to which] neither spouse possesse[s] an independent interest in the property." *Id.* In *Craft*, the Supreme Court examines the interplay of state and federal law, and determines these liens can attach. At that point, "once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law." *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Nothing in *Rodgers* suggests that federal law treats tenancies by the entirety differently than any other cotenancy in which a delinquent taxpayer shares an ownership interest with an unindebted spouse.[1]

1. Other district courts who considered this issue come to the same conclusion. *See Pletz v. United States (In re Pletz),* 221 F.3d 1114, 1117 (9th Cir.2000) ("to enforce a lien and collect on justly owed debts, the district court is empowered to order the sale of property to satisfy the tax debt of one tenant, so long as it compensates the nondebtor spouse for his or her interest.") (*citing Rodgers,* 461 U.S. at 680, 103 S.Ct. 2132); *United States v. Davenport,* 106 F.3d 1333, 1337 (7th Cir.1997) (holding, before the Supreme Court's decision in *Craft,* that *Rodgers* extends to tenancies by the entirety); *Paternoster v. United States,* 640 F.Supp.2d 983, 988–90 (S.D.Ohio 2009) (death of indebted spouse does not extinguish federal tax lien, which remains attached to the one-half interest transferred to the surviving spouse and may be enforced against escrowed proceeds from the sale of the property); *United States v. Guthery,* No. 8:07–CV–941–T27EAJ, 2009 WL 1010431, at *3, 2009 U.S. Dist. LEXIS 31546, at *9–10 (M.D.Fla. Apr. 14, 2009) (unpublished) ("Federal tax liens attach to property held by tenants by the entireties even when only one of the spouses is liable for the unpaid taxes. *See [Craft,* 535 U.S. at 283–88, 122 S.Ct. 1414; *Rodgers,* 461 U.S. at 699–700, 103 S.Ct. 2132]. Accordingly, the tax liens on the subject property can be foreclosed and the property sold to satisfy, either in whole or in part, [the defendant's] tax liabilities."); *United States v. Webb,* No. 07–00564JMS/KSC, 2008 WL 4761745, at *4–6, 2008 U.S. Dist. LEXIS 85824, at *13–20 (D.Haw. Oct. 23, 2008) (unpublished) (holding that, under *Rodgers* and *Craft,* property owned by delinquent taxpayer and unindebted third party as tenants by the entireties may be sold to satisfy the taxpayer's debt, as long as the third party receives compensation); *United States v. Barr,* No. 07–11717, 2008 WL 4104507, 2008 U.S. Dist. LEXIS 66868 (E.D.Mich. Sept. 2, 2008) (O'Meara, J.) (unpublished) (same), *appeal docketed,* No. 09–1710 (6th Cir. May 28, 2009); *United States v. Callanan,* No. 07–14051–CIV–GRAHAM/LYNCH, 2008 WL 6113516, 2008 U.S. Dist. LEXIS 108909 (S.D.Fla. June 17, 2008) (unpublished) (same); *United States v. Miller,*

Therefore, the Court holds that it has the legal authority to order a judicial sale of the Niles Property.

### C. Value of Mrs. Barczyk's Interest in the Niles Property

Mrs. Barczyk contends that, to determine the proper value of her interest in the Niles Property, the Court must consider all her rights, including her survivorship interest. When assessing the value of two spouses' respective survivorship interests in entireties property, courts employ joint-life actuarial tables, which estimate each party's life expectancy. Applying this method, Mrs. Barczyk estimates that her interest in the Niles Property is worth roughly 63% of its value. The Government objects, and argues Mrs. Barczyk should receive no more than half of the proceeds from the sale.

Although *Craft* determined that federal tax liens attach to tenancies by the entirety, the Supreme Court unfortunately declined to provide any guidance on how to evaluate each spouse's individual interest in the property. 535 U.S. at 289, 122 S.Ct. 1414.[2] Mrs. Barczyk argues that any calculation must account for her survivorship interest. She relies on a paragraph in *Rodgers*, where the Supreme Court estimates the value of one spouse's interest in homestead property under Texas law:

> The exact method for the distribution required by § 7403 is not before us at this time. But we can get a rough idea of the practical consequences of the principles we have just set out. For example, if we assume, *only for the sake of illustration*, that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three nondelinquent surviving or remaining spouses, aged 30, 50, and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89%, and 64%, respectively, of the proceeds of the sale of their homes as compensation for that estate.

*Rodgers*, 461 U.S. at 698–99, 103 S.Ct. 2132 (emphasis in original) (footnote omitted). Mrs. Barczyk concedes this passage is only dicta. However, she argues, it is the most persuasive authority on this subject.

This Court appreciates that Supreme Court dicta should not lightly be ignored. However, *Rodgers* goes to great lengths to downplay the precedential value of this

No. 3:06–CV–469, 2008 WL 56005, 2008 U.S. Dist. LEXIS 503 (N.D.Ind. Jan. 2, 2008) (unpublished) (same); *United States v. Tolbert*, No. 06–5146, 2007 WL 2710432, 2007 U.S. Dist. LEXIS 68041 (W.D.Ark. Sept. 13, 2007) (unpublished) (same); *United States v. Persaud*, 420 F.Supp.2d 1263 (M.D.Fla.2006) (same); *United States v. Ryan*, No. 04–0531–CV–W–GAF, 2005 WL 1429760, 2005 U.S. Dist. LEXIS 17435 (W.D.Mo. June 16, 2005) (unpublished) (same); *United States v. Frein*, No. 6:04–cv–182–Orl–22DAB, 2005 WL 518980, 2005 U.S. Dist. LEXIS 41058 (M.D.Fla. Jan. 26, 2005) (unpublished) (same); *Wilson v. Wilson*, No. 02–CV–70833, 2002 WL 31545995, 2002 U.S. Dist. LEXIS 21973 (E.D.Mich. Oct. 21, 2002) (Zatkoff, J.) (unpublished) (same); *Basher v. United States*

*(In re Basher)*, 291 B.R. 357 (Bankr.E.D.Pa. 2003) (same).

**2.** The Internal Revenue Service responded to *Craft* by issuing a notice on collections from entireties property. I.R.S. Notice 2003–60, 2003–39 I.R.B. 643, 2003 WL 22100950, 2003 IRB LEXIS 386 (Sept. 11, 2003). This notice sets forth a general rule that, when foreclosing upon property to which federal tax liens have attached, "the value of the taxpayer's interest in entireties property will be deemed to be one-half." *Id.* Notice 2003–60 is not binding on district courts, but some regard it as a source of guidance. *See Popky v. United States*, 326 F.Supp.2d 594, 602 (E.D.Pa.2004); *In re Gallivan*, 312 B.R. 662, 665–66 (Bankr. W.D.Mo.2004).

paragraph. The Court starts by warning the reader that: "[t]he exact method for distribution required by § 7403 is not before us at this time." *Id.* at 698, 103 S.Ct. 2132. In case this is not clear enough, two sentences later, the Court specifies that its example is *"only for the sake of illustration."* *Id.* (emphasis in original). Given these repeated disclaimers, the authoritative value of this part of the opinion is very limited.

Mrs. Barczyk also states that most courts of appeals consider survivorship rights when evaluating individual interests in joint tenancies, and argues this Court should follow their example. *See Pletz v. United States (In re Pletz )*, 221 F.3d 1114, 1117–18 (9th Cir.2000) (assuming that, under *Rodgers,* courts must use actuarial tables to determine each spouse's interest in entireties property); *United States v. Baran,* 996 F.2d 25, 28 (2d Cir.1993) (holding that district court was within its discretion in deciding that a life estate should be valued according to IRS actuarial tables); *Harris v. United States,* 764 F.2d 1126, 1130–31 (5th Cir.1985) (using joint-life tables to calculate interests in homestead property under Texas law); *United States v. Molina,* 764 F.2d 1132, 1133 (5th Cir. 1985) (same).

The Government argues that these cases are inapposite, and urges the Court to follow *Popky v. United States,* 419 F.3d 242 (3d Cir.2005), instead. The facts of *Popky* are the same as here: a nondelinquent spouse argued that her interest in a tenancy by the entirety was worth more than half of the property. *Id.* at 243. The Third Circuit rejected this claim, stating:

> Valuing the interests of tenants by the entireties equally accords with the longstanding Pennsylvania common law definition of tenancies by the entirety. As the District Court correctly observed, "the equal division of assets between spouses ... parallels the distribution of

entireties property when an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons." Sound policy reinforces the District Court's approach to valuation, as an equal valuation is far simpler and less speculative than the valuation contemplated by the Popkys.

*Id.* at 245 (*quoting Popky v. United States (Popky I )*, 326 F.Supp.2d 594, 602 (E.D.Pa.2004) (other citations omitted)).

The Government cites several other cases in which district courts reached the same conclusion. *See United States v. Tolbert,* No. 06–5146, 2007 WL 2710432, at *5, 2007 U.S. Dist. LEXIS 68041, at *13 (W.D.Ark. Sept. 13, 2007) (unpublished) (stating, without justification, that the property interest of a co-tenant by the entirety is worth "no more than half the value of the property."); *United States v. Ryan,* No. 04–0531–CV–WGAF, 2005 WL 1429760, at *9, *10–11, 2005 U.S. Dist. LEXIS 17435, at *27–28, 33–34 (W.D.Mo. June 16, 2005) (unpublished) (stating that, although *Rodgers* dicta supports actuarial analysis, the Government can also seek 50% of proceeds from a foreclosure sale); *In re Gallivan,* 312 B.R. 662, 665–66 (Bankr.W.D.Mo.2004) (relying on Notice 2003–60, *Popky,* and *In re Garner,* 952 F.2d 232, 236 (8th Cir.1991), where the appeals court ordered a bankruptcy trustee to return to a non-debtor spouse half the proceeds from the sale of common stock held as tenants by the entireties). However, the Government notes, two courts have taken a different route, holding that the proceeds of a foreclosure sale must be distributed according to the joint tenants' respective life expectancies. *See In re Murray,* 318 B.R. 211, 214 (Bankr. M.D.Fla.2004) (holding, without justification, that "[d]espite its administrative inconvenience, ... the value of a debtor's interest in tenancy by the entireties property must be determined by reference to

joint life actuarial tables."); *Basher v. United States (In re Basher)*, 291 B.R. 357, 364–66 (Bankr.E.D.Pa.2003) (holding that dividing the value of entireties property in half would not account for each spouse's survivorship interest).

■ Upon reviewing the parties' cases, the Court observes that, while some patterns do emerge, there is no consensus on how to value spousal interests in joint tenancies. Some courts follow the Supreme Court's dicta in *Rodgers*. *In re Pletz*, 221 F.3d at 1117; *Harris*, 764 F.2d at 1130–31; *Molina*, 764 F.2d at 1133. Some hold that each spouse's survivorship rights must be included in the calculation of interests. *Murray*, 318 B.R. at 214; *Basher*, 291 B.R. at 364. Other courts divide the value of the property in half, by reference to state law, *Popky*, 419 F.3d at 245, by analogy to the bankruptcy context, *In re Gallivan*, 312 B.R. at 666, or for no apparent reason, *Tolbert*, 2007 WL 2710432, at *4–5, 2007 U.S. Dist. LEXIS 68041, at *13. Finally, one court seems to recognize both options. *Ryan*, 2005 WL 1429760, at *9, *10–11, 2005 U.S. Dist. LEXIS 17435, at *27–28, 33–34.

In the absence of a clear rule of law, this Court believes the most judicious way to proceed is to value Mr. and Mrs. Barczyk's interests in the Niles Property equally. This solution has several advantages. First, it does not suffer from the uncertainty inherent in calculating survivorship interests. The district court in *Popky* summarized this problem quite eloquently:

> [The actuarial] approach relies on a speculative prediction that both spouses will have an average life span[,] and it neither accounts for the health of the spouses nor for the likelihood of divorce or a sale of the property ... [,] which could break up the tenancy by the entireties. To include these factors would make valuation infinitely more compli-

cated and would ... reach a valuation based merely on speculation.

*Popky I*, 326 F.Supp.2d at 603.

This Court agrees. Joint-life actuarial tables are extremely useful to estimate life expectancy among groups of individuals. Insurance companies rely on these tables to evaluate risk among client populations, price their products, and determine how many reserves to maintain. When applied to a single person, however, their utility is limited. The fact that men have a shorter life expectancy tells us very little about the chance of a particular husband predeceasing his wife, or vice-versa. Of course, the analysis may be refined to include more specific information on that couple, for example on their overall health, whether they smoke, their jobs, etc. However, as stated in *Popky*, no matter how complex the valuation, the final result is never more than an educated guess. By contrast, dividing entireties property in half offers a more practical and less speculative alternative.

■ Equal valuation also comports with Michigan law. Since 1975, married couples in Michigan are "equally entitled to the rents, products, income, or profits, and to the control and management of real or personal property held by them as tenants by the entirety." Mich. Comp. Laws ("M.C.L.") § 557.71. Thus, each spouse has "the right to sell the property with the [other spouse's] consent and to receive half the proceeds from such a sale." *Craft*, 535 U.S. at 282, 122 S.Ct. 1414. The same principle applies in case of divorce: the tenancy by the entirety dissolves, "giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise." *Id.* (*citing* M.C.L. § 552.102). *See also In re Ignasiak*, 22 B.R. 828, 830 (Bankr. E.D.Mich.1982) ("Upon divorce, the tenancy by the entirety becomes a tenancy in

common with each party owning an undivided one-half interest in the estate.") (*citing Budwit v. Herr,* 339 Mich. 265, 63 N.W.2d 841 (1954)); *Newlove v. Callaghan,* 86 Mich. 297, 48 N.W. 1096, *reh. den.,* 86 Mich. 301, 49 N.W. 214 (1891) (where a tenancy by the entirety is created to defraud the creditor of an indebted spouse, the creditor is entitled to a decree for the sale of an undivided one-half of the estate).

Another reason to adopt the equal valuation rule is that the actuarial analysis can lead to paradoxical results. For example, if the delinquent taxpayer is also the spouse with the longest life expectancy, he will obtain the largest share of the property, at the expense of the other spouse. In this scenario, the unindebted spouse is doubly harmed: first, by losing the property through no fault of her own, and second, by receiving a smaller share of the proceeds. Dividing the property equally between spouses yields a more equitable result.

This is not to say that equal valuation is always the most equitable alternative. A situation may arise in which half of the value of the property is simply not enough to adequately compensate the nondelinquent spouse for her loss. Michigan's divorce law provides a solution to this problem. In Michigan, when tenants by the entireties divorce, they become tenants in common with equal interests in the property, unless the divorce decree states otherwise. M.C.L. § 552.102; *Craft,* 535 U.S. at 282, 122 S.Ct. 1414. This is only the default rule, however; state courts are not required to apply it in every case. If the equities favor a different solution, a court may "make such division between [the spouses] as it deems equitable and just." 14 Dena M. Marks, *Michigan Law & Practice* 2d DIVORCE § 136 (2005) (*citing Lukshaitis v. Lukshaitis,* 314 Mich. 426, 22 N.W.2d 825 (1946); *Montgomery v.*

*Montgomery,* 221 Mich. 31, 190 N.W. 687 (1922)). For instance, if a marriage is particularly short in duration, or if one spouse contributed disproportionately to the relationship, the court may determine that fairness requires giving one spouse a greater share.

 The same approach, applied to tax lien enforcement under 26 U.S.C. § 7403, effectively mitigates the risk of causing one spouse disproportionate harm through equal division. Therefore, the Court holds that, when a spouse's failure to pay federal taxes results in foreclosure and forced sale, under § 7403, of property owned by the entirety, each spouse's interest in the property must be valued equally, unless extraordinary circumstances and equity dictate a different outcome. This simple default rule can be applied to most cases with predictable results, while still giving a court the flexibility to impose an alternative distribution if the particular facts of a case demand it.

Here, the Court finds no reason to depart from the equal valuation rule. Mrs. Barczyk does not cite any extraordinary circumstance that would justify a different result, nor does the Court see any. Therefore, the Court holds that Mrs. Barczyk is entitled to half of the proceeds from the sale of the Niles Property.

## V. CONCLUSION

For reasons stated, the Court **GRANTS** the Government's motion for summary judgment and **DENIES** Mrs. Barczyk's motion.

**IT IS ORDERED.**