ALICE M. BATCHELDER, Chief Judge,
concurring in part and dissenting in part.
I concur with the majority opinion’s conclusion that foreclosure of the residence of Charles and Carolyn Barr was appropriate pursuant to 26 U.S.C. § 7403. The majority opinion, however, conflates two distinct issues: (1) whether foreclosure is appropriate, in order to satisfy the tax obligations of her husband, Charles Barr; and (2) the proper distribution of the sales proceeds post-foreclosure. The majority opinion appears to conclude that the district court was correct because it was also correct in determining that Mrs. Barr was entitled to only 50% of the net sales proceeds. While I agree that foreclosure was correct, there is no legal justification for concluding, as the majority opinion does, that the propriety of foreclosure is somehow dependent upon a particular distribution of proceeds. I also strongly reject the majority opinion’s surprising conclusion that Michigan law requires us to treat a forced sale for tax purposes as identical to a consensual sale. For these reasons, I respectfully dissent.
A. The District Court’s Order of Foreclosure
It is undisputed that the government had the right to request, pursuant to 26 U.S.C. § 7403, that the district court order the sale of the Residence. United States v. Rodgers, 461 U.S. 677, 680, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (holding that § 7403 “grant[s] power to order the sale”); United States v. Craft, 535 U.S. 274, 283, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (holding that, under Michigan law, tenants in the entirety possess sufficient property interests for federal tax liens to attach). The power to order the sale, however, “is limited to some degree by equitable discretion” and, if the property is sold, the non-delinquent spouse is entitled to the portion of the sale proceeds “as represents complete compensation for the loss of the [property interests].” Rodgers, 461 U.S. at 680, 103 S.Ct. 2132.
The plain language of § 7403 indicates that a district court may order the sale of property, which allows the district court “limited room ... for the exercise of reasoned discretion.” Id. at 706, 103 S.Ct. 2132. However, the Supreme Court has stated that this discretion is limited and “should be exercised rigorously and sparingly, keeping in mind the Government’s paramount interest in prompt and certain collection of delinquent taxes.” Id. at 711, 103 S.Ct. 2132. In determining whether to decline to authorize a sale, a district court should consider, among others, the following factors: (1) the extent to which the government’s financial interests would be prejudiced if it could sell only a partial interest in the property, rather than the property as a whole; (2) whether the third party with a non-liable separate interest would, in the normal course of events, have a legally recognized expectation that the property would not be subject to a forced sale; (3) the likely prejudice to the third party, both in personal dislocation costs and practical undercompensation; and (4) the relative character and value of the non-liable and liable interests held in the property.[1] Id. at 710-11, 103 S.Ct. 2132.
*378 The majority opinion correctly rejects Mrs. Barr’s argument that the Rodgers balancing test is mandatory. The majority opinion also correctly concludes that, even if the balancing test was mandatory, foreclosure would still have been required under § 7403. However, although the district court did not err in concluding that foreclosure was appropriate, it did err in its discussion of the second factor and Mrs. Barr’s alleged complicity with the transfer of four Saginaw, Michigan properties in order to “frustrate the United States’ tax collection efforts.”
Mrs. Barr had a legal right to preclude sale of the Residence, and there is no legal justification for concluding that her participation in the transfer of the Saginaw Properties somehow eliminated that “legally recognized expectation” that the Residence could not be sold without her permission. The district court was correct that Mrs. Barr’s unclean hands argue against an exercise of discretion in her favor, but that does not justify an incorrect application of the second Rodgers factor, especially since the Rodgers Court expressly stated that the four factors listed did not comprise a comprehensive list, thus allowing for other considerations. Rodgers, 461 U.S. at 710, 103 S.Ct. 2132. The district court should have concluded that the second factor weighed in favor of Mrs. Barr, and discussed Mrs. Barr’s participation of the transfers of the Saginaw properties when considering other equitable factors relative to the proposed foreclosure.[2]
B. The District Court’s Valuation of Property Interests
The district court is also charged with determining the proper division of sale proceeds between innocent third parties and the government. The Supreme Court has offered the following instructions to guide that process: (1) distribution of the sale proceeds must consider all the interests held by the parties, Rodgers, 461 U.S. at 681, 103 S.Ct. 2132; (2) the district court must look to state law to determine each party’s “bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property,” Craft, 535 U.S. at 278, 122 S.Ct. 1414; (3) the district court must ensure that innocent third parties receive “complete compensation” for their interests, Rodgers, 461 U.S. at 680, 103 S.Ct. 2132;[3] (4) the district court may not award the government any more of the proceeds than the share to which it is entitled, id. at 699, 103 S.Ct. 2132 (declaring that the provisions of § 7403 “ensure] that the Government not receive out of the proceeds of the sale any more than to which it is properly entitled”); and (5) the government’s interest is limited to the interest held by the delinquent taxpayer, which interest must be established prior to the § 7403 order of sale, *379 id. at 690-91, 108 S.Ct. 2132. These guidelines make it abundantly clear that Mrs. Barr’s proposed valuation method is illogical and unsupportable. However, the majority opinion’s simplistic valuation method is similarly flawed.
The majority opinion correctly identifies the property rights Mrs. Barr possesses— a life estate, a survivor interest, and a right to prevent sale, among others—but then loses its way by attempting to infer precisely how a Michigan court would value those property interests in a situation like this. I strongly disagree with the majority opinion’s conclusion that a § 7403 forced sale is equivalent to a divorce or consensual sale, for reasons I describe in greater detail below. However, even if Michigan courts would agree with the majority opinion on this point, that conclusion is irrelevant to our consideration of the issues here, because “although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law.” Rodgers, 461 U.S. at 683, 103 S.Ct. 2132. We are constrained to recognize the property rights Mrs. Barr possesses under Michigan law, but the issue of how those interests are to be compensated is solely a matter of federal law.
The weight of federal law argues strongly against the majority opinion’s conclusion that Mrs. Barr is entitled to a simple fifty percent interest because she is a tenant by the entireties. The district court and the majority opinion rely on Popky v. United States, 419 F.3d 242, 245 (3d Cir.2005), in which the Third Circuit adopted a 50/50 split for tenants by the entireties because a 50/50 split was “far simpler and less speculative,” and because the Third Circuit viewed a § 7403 sale as equivalent to a consensual sale, id.[4] However, the far greater weight of the cases support a different approach. See Harris v. United States, 764 F.2d 1126, 1131-32 (5th Cir.1985) (valuing the spouses’ life estates and contingent survivor interests and determining that, based on her higher life expectancy, the wife had a 50.98% interest.); United States v. Gibbons, 71 F.3d 1496, 1500 (10th Cir.1995) (requiring the valuation of an ex-wife’s life estate and survivor interest and concluding that she was entitled to greater than one-half the total value of the property); In re Pletz, 221 F.3d 1114, 1117 (9th Cir.2000) (holding that proper valuation requires consideration of the life expectancies of the joint tenants, and rejecting the proposition that the wife’s share was limited to a half interest in the life estate).
Likewise, while this Circuit has never directly addressed this question, our prior decisions in other contexts support a rejection of a blanket 50/50 split. In United States v. 2525 Leroy Lane, 910 F.2d 343 (6th Cir.1990), this court was faced with a criminal forfeiture proceeding in which the property to be sold, via forfeiture, was held as a joint tenancy by the entireties. The court refused to sever the entireties estate and turn it into a tenancy in common because doing so “would not adequately compensate [the wife] for her survivorship interest.” Id. at 350. Unquestionably, the wife in 2525 Leroy Lane would have been entitled to only a one-half share of a tenancy in common, so this court has already determined that an innocent spouse’s interest in a tenancy by the entireties must be valued higher than an equivalent interest in a tenancy in *380 common if it is probable that the innocent spouse will outlive the guilty (delinquent) spouse.
Even ignoring the linguistic inconsistency of asserting that a forced sale and a consensual sale should be treated the same, treating a § 7403 forced sale as equivalent to a consensual sale or sale subsequent to a divorce also ignores a fundamental question of timing. When a divorce occurs, and the property is sold, the tenancy by the entirety is severed by the divorce decree first, and only then is the property sold. The divorce decree transforms the tenancy in the entireties into a tenancy in common, so a 50/50 split from a subsequent sale is the natural result. Similarly, when a consensual sale occurs, both parties consent to the sale, effectively surrendering their survivor interests and their right to prevent sale. Only then is the sale effectuated, and a 50/50 split is, again, the natural result. With a sale pursuant to § 7403, however, the value of the non-delinquent spouse’s interests must be determined prior to the § 7403 order, by which the court will extinguish those rights. Valuation of property interests under § 7403 cannot occur as if the non-delinquent spouse had already surrendered her interests. To do so would raise the unsightly specter of a taking without just compensation. See Rodgers, 461 U.S. at 697, 103 S.Ct. 2132 (holding that § 7403 requires compensation for every property interest that is “taken” in the process).
Mrs. Barr has legitimate property interests in her residence, and those interests cannot be simply assumed away by pretending that a § 7403 sale is the same as a consensual sale or a sale subsequent to a divorce decree. Supreme Court precedent demands that we protect Mrs. Barr’s right to compensation for her property interests during the § 7403 process, something which the majority opinion fails to do. The weight of case law, both from this circuit and our sister circuits, is also strongly in favor of recognizing, and requiring compensation for, Mrs. Barr’s survivor interest and right to prevent sale. Because the majority opinion fails to do either of these, I respectfully dissent.

. This factor could be misinterpreted as establishing a correct division of post-foreclosure sale assets as a prerequisite for foreclosure under § 7403. However, the Rodgers Court was concerned only with the possibility that the third party interest might be so large as to *378 swamp the interest of the delinquent taxpayer's interest. "[!]£, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.” Rodgers, 461 U.S. at 711, 103 S.Ct. 2132.

. While this may seem hyper-technical, this area of the law has suffered from a lack of clarity for long enough. We ought to clarify the analysis that the district courts should conduct in cases such as these, even at the risk of appearing hyper-technical.

. According to the Rodgers Court, it is only through awarding complete compensation to the innocent third party that § 7403 avoids any "difficulties under the Due Process Clause of the Fifth Amendment.” Rodgers, 461 U.S. at 697, 103 S.Ct. 2132. Therefore, district courts must take care to assure that innocent third parties receive compensation for each property interest they possess.

. There is simply no legal justification for ignoring the vested property rights of litigants in order to avoid complexity and uncertainty and, while I do not believe the majority opinion was adopting that particular rationale in support of its conclusion, I believe we should explicitly reject the Third Circuit's simplicity rationale.